# HARTZLER ET AL. v. THE GOSHEN CHURN AND LADDER COMPANY.

[No. 8,184. Filed February 4, 1914.]

1. TRADE-MARKS AND TRADE-NAMES.—*"Unfair Competition"*.—"Unfair competition" is the passing off, or attempt to do so, upon the public, of the goods or business of one person as and for the goods or business of another, by means of either an implied or express representation to that effect, and any conduct, the natural and probable tendency and effect of which is to thus deceive the public, constitutes actionable unfair competition. p. 464.

2. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Grounds of Relief.*—The basis of relief against unfair competition is found in the fact that one who builds a good will and reputation for his goods or business has thereby acquired a property right to the benefits of which he is entitled, and which, like other property, is protected against invasion. p. 464.

3. TRADE-MARKS AND TRADE-NAMES. — *"Trade-Names"*. — "Trade-names" are names which are used in trade to designate a particular business of certain individuals considered somewhat as an entity, or the place at which a business is located, or a particular class of goods, but they are not technically trade-marks because not capable of exclusive appropriation as trade-marks, though they may or may not be exclusive. p. 464.

4. TRADE-MARKS AND TRADE-NAMES.—*Exclusive Trade-Names.*—Exclusive trade-names are protected very much upon the same principles as trade-marks, and the rules governing the latter are applicable in determining what may be an exclusive trade-name. p. 465.

5. TRADE-MARKS AND TRADE-NAMES.—*Nonexclusive Trade-Names.*— Nonexclusive trade-names are names that are *publici juris* in their primary sense, but which in a secondary sense have become indicative of the goods or business of a particular trader. p. 465.

6. TRADE-MARKS AND TRADE-NAMES. — *Acquiring Trade-Names.* — Trade-names are acquired by adoption and user and belong to him who first used and gave them value. p. 465.

7. TRADE-MARKS AND TRADE-NAMES.— *Unfair Competition.—Elements.*—Unfair competition is established by a showing that the defendant's conduct has either actually resulted, or will naturally and probably result, in deception and confusion whereby the goods of defendant will be purchased in the belief that they are those of the plaintiff. p. 465.

8. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.*—Unfair competition is always a question of fact as to whether defendant is by his conduct passing off his goods or his business as that of the plaintiff. p. 465.

9. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Intent.* —An actual fraudulent intent need not be shown to make a case of unfair competition, especially where only preventive relief is sought. p. 466.

10. TRADE-MARKS AND TRADE-NAMES. — *Unfair Competition.* — A dealer coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of his rival. p. 466.

11. TRADE-MARKS AND TRADE-NAMES. — *Unfair Competition.* — *Descriptive and Generic Names.*—Where descriptive and generic names by long usage have become identified in the minds of the public with the goods or business of a particular trader, their use by a subsequent trader in connection with similar goods or business in such manner as to deceive the public and pass off his goods or business for that of his rival, constitutes unfair competition. p. 466.

12. TRADE-MARKS AND TRADE-NAMES.— *Unfair Competition.— Corporate Names.*—A corporate charter grants no immunity in the use of a deceptive name; hence the use of corporate names may be enjoined upon the general principles of trade-marks and unfair competition, where they are sufficiently similar to names in use by prior traders to produce confusion and injury. p. 467.

13. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.*—The use of circulars and advertisements calculated to deceive the public and pass off defendant's goods or business as that of the plaintiff constitutes unfair competition and will be enjoined. p. 467.

14. TRADE-MARKS AND TRADE-NAMES.— *Unfair Competition.—Actions.—Complaint.—Sufficiency.*—In an action for damages and injunctive relief on account of unfair competition, a complaint alleging facts showing a scheme to cause the public to believe that ladders manufactured by defendant were those of plaintiff's manfacture, by using the words "security ladder", which was the established trade-name for plaintiff's goods, as a part of its corporate name, "The Security Ladder Co.", which it placed upon its goods and advertising matter, was sufficient to show a conspiracy to adopt plaintiff's trade-name and to pass off the goods of defendant as the goods of plaintiff. p. 467.

15. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Evidence.—Sufficiency.—Fraud.*—In an action to enjoin unfair competition on the ground that defendant was causing the public to believe that ladders of its manufacture were those of the plaintiff, evidence showing that plaintiff had used the name "Security" as a trade-name applied to a certain make of ladder, and had featured such ladder and name prominently in its advertising, that defendant's advertising matter also featured the name "Security" as its corporate name, and much of it was so similiar in form to that sent out by the plaintiff as to actually mislead and deceive certain of plaintiff's customers, and that the name "Security" as adopted by defendant with full knowledge of the use to which it had been put by plaintiff, was sufficient to warrant the presumption of fraud in the selection of defendant's corporate name. pp. 468, 470.

16 EVIDENCE.—*Intent.—Presumptions.*—A man is presumed to intend the consequences of his own acts. p. 469.

17. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Relief. —Injunction and Damages.*—Where a trade-name is innocently or ignorantly taken and used in a way which amounts to unfair competition, injunction is ordinarily the relief granted; but where such trade-name is so taken and used with knowledge of its prior use, an action at law for damages may be maintained. p. 470.

18. CORPORATIONS.—*Officers and Directors.—Liability.*—Officers or directors of a corporation may be personally liable for acts which are also torts of the corporation. p. 471.

19. CORPORATIONS.—*Liability of Stockholders.—Torts of Corporation.*—A stockholder, who is not an officer of the corporation and in no way connected with the management of its business, cannot, as a general rule, be held personally liable for its torts. p. 471.

From Elkhart Superior Court; *Vernon W. VanFleet,* Judge.

Action by The Goshen Churn and Ladder Company against Aaron Hartzler and others. From a judgment for plaintiff, the defendants appeal. *Affirmed* in part, and *reversed* in part.

*Lou W. Vail,* for appellants.
*E. A. Dausman* and *P. L. Turner,* for appellee.

IBACH, J.—This suit was brought by appellee against the individual defendants and The Security Ladder Company, a corporation, to recover damages and to enjoin them from interfering with appellee's business, upon the theory of unfair competition. The averments of the complaint are the following: "That the plaintiff is a corporation, organized and existing under and by virtue of the laws of the State of Indiana, and for eight years last past has been, and now is, engaged in the business of manufacturing and selling churns, ladders, and lawn swings. That the plaintiff's home office, its factory and its principal and only place of business now is, and for the eight years last past has been continuously, at the city of Goshen, in the county and State aforesaid. That the plaintiff for the eight years last past has manufactured and sold, and is now manufacturing and selling, a certain step ladder, under, by and in the trade-name of the 'Security Ladder'; that during the eight years last past the plaintiff has applied the said trade-name to said ladder and has stamped said trade-name thereon; that the plaintiff has expended large sums of money and devoted much time and effort in introducing and placing on the market said Security Ladder under said trade-name; that by extensive advertising and continuous effort the plaintiff has built up a good trade in said Security Ladder; that the plaintiff has made a specialty of said Security Ladder and the manufacture and sale thereof constitutes a prominent feature of plaintiff's business; that said Security Ladders have been and now are extensively advertised throughout the country by jobbers and retailers who pur-

chase them from the plaintiff; that said Security Ladders have become widely known to the trade and to consumers by the name of the Security Ladder and have attained a high reputation for strength, durability, and good qualities generally; and that the manufacture and extensive sale of said ladders is a source of profit to the plaintiff. That the defendant The Security Ladder Company is a corporation, organized and existing under and by virtue of the laws of the State of Indiana, and has its home office and its principal and only place of business in the city of Goshen, in the county and State aforesaid. That the said defendant corporation is engaged in the manufacture and sale of step ladders similar in design and construction to plaintiff's said ladders. That the individual defendants Aaron Hartzler, Samuel F. Poorman, Arthur E. Brownell, George Bosse, Harvey D. Rough, William O. Vallette, George A. Riley and Lou W. Vail are the stockholders and officers of the defendant The Security Ladder Company. That the defendant Aaron Hartzler was one of the original incorporating members of the plaintiff corporation, The Goshen Churn and Ladder Company, and was a stockholder in and was the secretary and treasurer of the said The Goshen Churn and Ladder Company from the organization thereof to November 16, 1909; that on November 16, 1909, said Hartzler sold his interest in the said The Goshen Churn and Ladder Company to his associate stockholders therein; and that thereupon he promoted the organization of the defendant corporation, The Security Ladder Company; that the defendants Samuel F. Poorman, Arthur E. Brownell and Harvey D. Rough, on and prior to November 16, 1909, were in the employ of the plaintiff in the capacity of traveling salesmen; that the defendant George Bosse, on and prior to November 16, 1909, was in the employ of the plaintiff in the capacity of foreman of one of the departments, and each and all of the individual defendants, at the time of the organization of the defendant corporation, well knew

the use the plaintiff had made and was then making of the name 'Security' in connection with the advertisement and sale of its ladders, and well knew the plaintiff's interest in said name. That the said individual defendants, in disregard of the plaintiff's rights, conspired to create a corporation which should have a pretended color of right to use the name 'Security Ladder' for the purpose of deceiving the public into the belief that they were the original makers or the manufacturing successors of the original makers of such ladders, and thus create, by means of the deception, an unfair and tricky competition in trade with the plaintiff. That the defendants have prominently displayed the plaintiff's corporate name in their advertising literature in connection with the corporate name of the defendant corporation, concerning the manufacture and sale of ladders; that the defendants in their advertising literature announced to the public the fact that the defendant Hartzler was formerly with the plaintiff in the capacity of secretary and treasurer, and that the defendants Poorman, Rough, and Brownell were formerly with the plaintiff in the capacity of traveling salesmen and would continue to travel the same territory they formerly covered for The Goshen Churn an Ladder Company; that in said advertising matter and literature the plaintiff's corporate name is prominently displayed in connection with the corporate name of the defendant company, and in connection with the names of the individual defendants as dealers in ladders, and in connection with the name of the defendant Hartzler as plaintiff's former secretary and treasurer, and in connection with the names of the defendants, Poorman, Rough and Brownell as plaintiff's former traveling salesmen; that said advertising matter is well calculated to deceive ordinary purchasers of ladders into the belief that the defendants are carrying on the business of the plaintiff—their former employer—or in some way connected with it; and that the defendants have been selling their goods, the

ladders herein referred to, from the plaintiff's catalogues
and photographs. That the name of the defendant cor-
poration was unlawfully and wrongfully selected specifically
for the benefit that would accrue from the use of the name
'Security Ladder' and for the purpose thereby unneces-
sarily to create unfair competition. That the name of the
defendant corporation was wrongfully and unlawfully
selected in imitation of plaintiff's trade-name 'Security
Ladder' for the fraudulent purpose of deceiving the public
and appropriating plaintiff's good will and reputation.
That by reason of the defendant's literature, advertising
matter and correspondence being subscribed by the cor-
porate name of the defendant corporation, 'The Security
Ladder Company', purchasers, dealers, and users are led
to believe and will be led to believe, are induced to buy and
will be induced to buy from the defendant corporation in
the belief that they are buying plaintiff's goods, as and for
the goods made by the plaintiff; and that purchasers of
ladders, while intending to buy of the plaintiff, are led to
purchase and will continue to be led to purchase, ladders
of the defendant corporation's manufacture, thereby dimin-
ishing plaintiff's profits, to the great and irreparable injury
of the plaintiff. That by reason of the fact that the lad-
ders manufactured and to be manufactured by the defend-
ants are similar in size and design to the ladders manu-
factured by the plaintiff, the use of the name of the defend-
ant corporation, in any manner therewith, whether stamped
thereon or otherwise associated with said ladders, tends to
mislead and confuse dealers, purchasers and users of lad-
ders as to the origin of the goods and enables the defend-
ants to sell their goods as and for the goods of the plain-
tiff; and that the defendants are thus wrongfully appro-
priating the benefits of the corporation acquired by the
plaintiff's goods. That the defendants, by wrongfully select-
ing, adopting and appropriating the plaintiff's said trade-
name as and for the corporate name of the defendant cor-

poration, are enabled to palm off their goods as and for the goods of the plaintiff; and that the defendants are thereby palming off their goods as and for the goods of the plaintiff. That the plaintiff has the exclusive right to the use of said trade-name 'Security' as applied to ladders, and to the trade-name 'Security Ladder' especially as against the defendants' wrongful and misleading use of said names as aforesaid; and that the use of the name 'The Security Ladder Company' or 'Security Ladder Company' as and for the name of the defendant corporation is an unwarranted interference with the trade and good will and reputation of the plaintiff.''

It is also alleged that in the manner and form aforesaid, the defendants have pirated the plaintiff's trade-name and business; are attempting to wrongfully take and appropriate the plaintiff's business prestige and reputation; are stealing the business, good will, profits and emoluments accruing to plaintiff by reason of its long term of years in selling and advertising Security ladders; and are endeavoring to sell their ladders as plaintiff's, to plaintiff's damage in the sum of $10,000. That the defendants threaten to, and will, unless restrained by this court, continue to infringe on plaintiff's rights as aforesaid, and to stamp the name ''The Security Ladder Company'' or the name ''Security Ladder,'' or the name ''Security'' on their ladders, to the irreparable injury of the plaintiff, for which it can not be compensated in damages. Wherefore, the plaintiff prays judgment for $10,000, and that defendants, all and each of them be perpetually enjoined from using the name ''The Security Ladder Company'', or the name ''Security Ladder Company'' or the name ''Security'', or any name or names substantially identical therewith for their corporate name; or in connection with the business of the manufacture and sale of ladders; and from stamping ladders of their manufacture with such names; and from interfering with the paramount right of plaintiff to such names in connection

with the manufacture and sale of ladders; and from representing that goods manufactured by them are manufactured by plaintiff; and from using the plaintiff's corporate name in their advertising in any manner calculated to deceive ordinary purchasers of ladders as to the origin of defendants' goods; and from advertising the fact that they or any of them were formerly with the plaintiff, in any manner that tends to injure the plaintiff, and for all other proper relief.

Demurrers to this complaint by each defendant were overruled, and the issues closed by answers in general denial. The cause was tried by the court, which found the complaint true and proven, that the defendants in adopting and using the corporate name of the Security Ladder Company and in adopting and using in its corporate name the word "Security" perpetrated a fraud upon the plaintiff, that the use of such corporate name and such word was wrongful to the plaintiff, and caused it to be damaged in the sum of $500, that the defendants should be enjoined, substantially in accordance with the prayer of the complaint, and rendered judgment in conformity to the findings.

Appellants separately assign that the complaint does not state facts sufficient to constitute a cause of action against appellants and each of them, that the court erred in overruling the demurrer of appellants and each of them to the complaint, and that the court erred in overruling the separate and several motions for new trial of each appellant, and appellant's joint motion for new trial.

The subject of unfair business competition has not been much considered by our courts. Indeed, we believe that there is but one case reported in this State, that of *Computing Cheese Cutter Co.* v. *Dunn* (1909), 45 Ind. App. 20, 88 N. E. 93, which deals exclusively with the question, though there are some older trade-mark cases. We therefore feel justified in referring at some length to the general principles of the law of unfair competition as deduced

from cases in other jurisdictions, and collected in text-books, and we find that in the following excerpts from the article in Cyc. on trade-marks, trade-names, and unfair competition, the rules applicable to the present case are stated in language probably more concise and accurate than our own would be.

"Unfair competition consists in passing off or attempting to pass off, upon the public, the goods or business of one person as and for the goods or business of another.

1. It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect. And it may be stated broadly that any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for that of another, constitutes actionable unfair competition. The definition is comprehensive enough to reach every possible means of effecting the result." 38 Cyc. 756.

"Relief against unfair competition is properly afforded upon the ground that one who has built up a good will and reputation for his goods or business is entitled to all

2. the benefits therefrom. Such good will is property, and like other property is protected against invasion. The deception of the public injures the proprietor of the business by diverting his customers and depriving him of sales which he otherwise would have made." 38 Cyc. 760.

"Trade-names are names which are used in trade to designate a particular business of certain individuals considered somewhat as an entity, or the place at which a busi-

3. ness is located, or of a class of goods, but which are not technical trade-marks either because not applied or affixed to goods sent into the market, or because not capable of exclusive appropriation by any one as trademarks. Such trade-names may, or may not, be exclusive.

Exclusive trade-names are protected very much upon the

same principles as trade-marks, and the same rules
that govern trade-marks are applied in determining
what may be an exclusive trade-name. Nonexclusive
trade-names are names that are *publici juris* in their
primary sense, but which in a secondary sense have
come to be understood as indicating the goods or
business of a particular trader. Trade-names are ac-
quired by adoption and user, and belong to the one
who first used them and gave them a value.    38
Cyc. 764.

"In order to make out a case of unfair competition, it
is not necessary to show that any person has been actually
deceived by defendant's conduct and led to purchase
his goods in the belief that they are the goods of
plaintiff or to deal with defendant thinking that he
was dealing with the plaintiff. It is sufficient to show that
such deception will be the natural and probable result of
defendant's acts. But either actual or probable deception
and confusion must be shown, for if there is no probability
of deception, there is no unfair competition. * * * Actual
instances of deception, however, afford the strongest pos-
sible proof of the deceptive tendency of defendant's acts,
and the presence or absence of such proof is often referred
to as a reason for granting or withholding relief. As in
the case of the infringement of another's trade-mark, the
true test of unfair competition is whether the acts of de-
fendant are such as are calculated to deceive the ordinary
buyer making his purchases under the ordinary conditions
which prevail in the particular trade to which the contro-
versy relates. This has been said to include the incautious,
unwary, or ignorant purchaser, but not careless purchasers
who make no examination." 38 Cyc. 773.

"Unfair competition is always a question of fact. The
question to be determined in every case is whether or
not, as a matter of fact, the name or mark used by
defendant has previously come to indicate and desig-

nate plaintiff's goods, or, to state it another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business.'' 38 Cyc. 779.

''Unfair competition involves trading upon another's reputation and good-will, and the injury is the same regardless of the intent with which it is done. Accordingly

9. the better view is that an actual fraudulent intent need not be shown where the necessary and probable tendency of defendant's conduct is to deceive the public, and pass off his goods or business as and for that of plaintiff, especially where only preventive relief against continuance of the wrong is sought or granted.'' 38 Cyc. 784.

''A dealer coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of his rival.

10. Owing to the nature of the goods dealt in or the common use of terms which are *publici juris,* some confusion may be inevitable. But anything done which unnecessarily increases this confusion and damage to the established trader constitutes unfair competition. The unnecessary imitation or adoption of a confusing name, label, or dress of goods constitutes unfair competition.'' 38 Cyc. 794.

''Even descriptive and generic names may not be used in such a manner as to pass off the goods or business of one man as and for that of another. Where such words or

11. names, by long use have become identified in the minds of the public with the goods or business of a particular trader, it is unfair competition for a subsequent trader to use them in connection with similar goods or business in such a manner as to deceive the public and pass off his goods or business for that of his rival. Accordingly the right to use generic names and descriptive terms is regulated by the courts in accordance with certain general rules

already stated. Thus, such terms may not be used in such a manner as to cause unnecessary deception of the public and damage to the complainant. It is unnecessary for the subsequent trader to use such terms in such a manner as to give his goods the same short name, or trade-name, in the market as that of the prior trader's goods, for it is easy to use such terms in some other honestly descriptive way without injury to any right of either party." 38 Cyc. 800.

"Corporate names have frequently been enjoined upon the general principles of trade-marks and unfair competition, where they were sufficiently similar to the names in use by prior traders to produce confusion and injury. A corporate charter grants no immunity in the use of a deceptive name. The same rule applies to corporate names as applies to the names of natural persons. The name may be used but only if used honestly." 38 Cyc. 819.

"Circulars, advertisements, or other announcements calculated to deceive the public and pass off defendant's goods or business as the goods or business of plaintiff constitute unfair competition and will be enjoined. The imitation or copying of the complainant's circulars and advertisements is strong evidence of fraud and will be enjoined. The use of another's trade symbols in advertising matter on bill-heads, stationery, etc., may be enjoined." 38 Cyc. 846.

As was said by Judge Roby in *Computing Cheese Cutter Co.* v. *Dunn, supra,* "The question in every case is whether the defendant is in fact attempting to sell his goods as the goods of some one else." The complaint avers facts showing that appellants were attempting to sell their goods as appellee's. The facts averred show the execution of a carefully conceived scheme, intended apparently to evade the letter of the law, but not its spirit. Instead of directly copying appellee's corporate name, or directly

selling goods under a name similar to appellee's trade-name, appellants used the plan of making their corporate name similar to appellants' trade-name, which had been prominently advertised, and thus endeavored to gain the advantage of the use of such trade-name, while not technically using it as such. In the case of *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.* (1905), 100 Me. 461, 62 Atl. 499, 4 L. R. A. (N. S.) 960, a corporation was enjoined from using as its corporate name the trade-name used by a firm in the same city of which the officers and stockholders of the new firm had been members. There are many other acts averred on the part of appellants, none of which perhaps, alone, would be illegal, but when combined, they are a part of a fraud upon appellee and the public, and of an illegal scheme to obtain business by representing the goods of appellants to be those of appellee. We believe also that the averments as to the individual defendants, the officers and stockholders and organizers of the appellant corporation, are sufficient as a matter of pleading to show them guilty of a conspiracy to take appellee's trade-name and pass off the goods of appellant corporation as appellee's.

The evidence as to the acts of the corporation and its officers substantially supports the allegations of the complaint. It was shown that appellee used the name "Security" as a trade-name applied to a certain make of ladder, and featured this ladder and this name prominently in its advertising, and sold more of these ladders than of any other single article by it manufactured; that defendants' advertising matter also featured the name "Security" as their corporate name, and much of it was similar in form to that sent out by the old company, e. g., appellee had been accustomed to send out to the trade postcards bearing the pictures of appellants Poorman, Brownell, and Rough, its travelling salesmen, announcing their coming, and appellant corporation sent out similar cards bearing pictures of the same men; that appellant corpora-

tion advertised the former connection of its officers with appellee, in such a manner that persons might be confused into thinking that appellant corporation was the successor of appellee. Two actual instances were shown in which orders intended for appellee were sent to appellants, those sending the orders having been misled by appellants' corporation name or advertising matter.

It must be admitted that extenuating circumstances were shown in regard to some of these things, and at one time appellants sent out a circular expressly disclaiming any connection with appellee. Naturally, when a new company whose officers were formerly officers of another company in the same line of business, begins operations in the same city, there may be some unpreventable confusion. But the one fact which overshadows all the other evidence against appellants, is that, although they had the whole English vocabulary of 450,000 words, as well as foreign languages, and the scope of inventive fancy, upon which they might draw in choosing a corporate name, yet they selected the very word which had been most prominent in the advertising of the old company. It is true that Hartzler, who selected the name, testified that he did so only because he thought it well expressed the character of ladders he intended to make, and that he had no thought of obtaining business advantage from its similarity to the trade-name of some of appellee's ladders. But he knew exactly what use had been made of the word "Security" in appellee's advertising, for he had prepared most of it. A man is presumed to intend the consequences of his own acts. "Under proper circumstances the court will find in his acts evidence of an intent to defraud even in the face of his most explicit denial that he ever intended to pass off his goods as those of the complainant. 'And such intent may be and often is, made out, not from direct testimony, but as a clear inference from all the circumstances, even when defendant protests that his intention was inno-

cent.'" Nims, Unfair Competition §30, see, also, §§28, 34.

"No name may be chosen in naming a corporation which will cause the new corporation to be passed off as some other company already in existence, or that will, when attached to the goods made by the new company, pass those goods off as the goods of some other company. * * * On the incorporators rests the affirmative duty of differentiating the name of a new corporation from all other names." Nims, Unfair Competition §102.

Certainly we cannot say that Hartzler in selecting the name "Security" fulfilled his affirmative duty on entering a field occupied by a rival of established reputation to do nothing to unnecessarily create or increase confusion between his goods and business and his rival's. The circumstances in this case are such that we think fraud should be presumed on the part of the one who selected the name of appellant corporation. In cases of this kind only injunctive relief is usually granted where a name is innocently or ignorantly taken. But where with knowledge of the facts a name is made use of in the first instance, or where the use of the name innocently taken is continued after knowledge of the facts, then an action at law for damages for knowingly selling goods as the plaintiff's may be maintained. *International Silver Co.* v. *Wm. H. Rogers Corp.* (1904), 66 N. J. Eq. 119, 57 Atl. 1037, 2 Ann. Cas. 407.

Appellant Hartzler promoted the corporation and selected its name, he and all but two of the individual defendants were officers or directors of appellant corporation at the time of the trial. Appellant corporation had continued in the use of its corporate name after full warning from appellee, and indeed, all of the defendants but two, from their connection with the old company, and from other evidence, must be held to have had from the first, knowledge of that company's right to the name "Security." Officers

or directors of a corporation may be personally liable for acts which are also torts of the corporation. 2 Thompson, Corporations (2d ed.) §1420. Appellants Riley and Vail, who were among the incorporators, are shown to have been nothing but stockholders, and to have severed their connection as such shortly after the organization of the company, and before the institution of this suit. Neither of them is shown to have had anything to do with the choosing of the name, nor during their connection with the company to have had any knowledge that there was another company in Goshen manufacturing a Security ladder, or that there was a Security ladder in existence. The better rule seems to be that, although one innocently using the trade-name of another may be enjoined from its use, he is not liable in damages, so long as its use continues innocent. *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co., supra.* Generally speaking, a stockholder, not an officer, and in no way connected with the management of the corporate business, can not be held personally liable for the torts of the corporation. 4 Thompson, Corporations (2d ed.) §4912. Further, it does not appear that these two parties Riley and Vail, were, when this suit was brought, either in a position to do the acts which they were enjoined from doing, or were threatening to do such acts, or that there was any indication that they would do so. Therefore, there was not evidence sufficient upon which to base the issuing of an injunction as against them.

We think that the court's decision as against appellants Riley and Vail is not sustained by sufficient evidence, and that the court erred in overruling their separate and several motions for new trial on that ground. As to these appellants the judgment is reversed, and the cause remanded for new trial, while as to the other appellants the judgment is affirmed, and it is ordered that they be required to pay

seven-ninths of the costs, and appellees two-ninths of the costs.

NOTE.—Reported in 104 N. E. 34. As to principles governing the use of trade-marks and trade-names, see 85 Am. St. 84. As to the personal liability of officer of corporation for personal injuries from torts in connection with its business, see 39 L. R. A. (N. S.) 901. As to whether statutory liability of stockholder or officer for debts of corporation includes liability for torts, see 22 L. R. A. (N. S.) 256. As to the use of a personal or corporate trade-name as unfair competition, see 2 Ann. Cas. 415; 16 Ann. Cas. 596. For a discussion of fraudulent intent as a necessary element of unfair competition or infringement of trade-mark, see 3 Ann. Cas. 32. See, also, under (5, 6) 38 Cyc. 765; (8) 38 Cyc. 770; (10) 38 Cyc. 758; (14) 38 Cyc. 891, 894; (15) 38 Cyc. 897; (16) 16 Cyc. 1081; (17) 38 Cyc. 891, 899; (18) 10 Cyc. 951; (19) 10 Cyc. 684.