OPINION
MAY, Judge.
Serenity Springs appeals a judgment in favor of the LaPorte County Convention and Visitors Bureau (“the Bureau”) that permanently enjoined Serenity Springs from using the internet domain name visit-michigancitylaporte.com and transferred the domain name to the Bureau. As “Visit Michigan City LaPorte” was not a protect-able trade name and Serenity Springs’ use of it was not unfair competition, we reverse.
FACTS AND PROCEDURAL HISTORY
We set forth the facts underlying this appeal in Serenity Springs v. LaPorte Cnty. Convention & Visitors Bureau, 986 N.E.2d 314, 317-19 (Ind.Ct.App.2013) (hereinafter “Serenity Springs I”):[1]
The Bureau ... is “the official destination marketing organization that represents the visitor industry and communities to create economic growth from visitor expenditures.” The Bureau’s goal is to increase tourism in LaPorte County, and in doing so, the Bureau *489 promotes a number of hotels and attractions in the area. Serenity operates a hotel resort in LaPorte County, which is one of the businesses promoted by the Bureau.
In early 2009, the Bureau contracted with a private marketing firm to conduct a branding study for the purposes of identifying new and better ways to promote tourism in the area. On September 9, 2009, the Bureau held a public meeting at which the results of the branding study were announced, and a representative of Serenity was in attendance. The Bureau’s representatives announced that the phrase “Visit Michigan City LaPorte” had been identified as the branding identifier for the area.
Immediately after the meeting, an employee of Serenity registered the domain name “visitmichigancityla-porte.com” at [the owner’s] behest and set it up to redirect internet traffic to Serenity’s website. Later that day, an employee of the Bureau attempted to register the same domain name, but discovered that it had already been purchased and was being used to direct internet traffic to Serenity’s website. The Bureau was able to register a number of similar domain names, including visitmiehigancitylaporte.org, visitmiehi-gancitylaporte.net, and michigancityla-porte.com.
Thereafter, the Bureau sent a cease- and-desist letter to Serenity claiming that Serenity had infringed its trademark and committed cybersquatting by registering visitmichigancitylaporte.com. Serenity responded that it had been unable to find any federal or state trademark registrations for Visit Michigan City LaPorte and further claimed that (1) Serenity had not committed trademark infringement because it registered and began using the visitmichigancityla-porte.com domain name before the Bureau made any commercial use of the designation Visit Michigan City La-Porte, and (2) that the designation was not protectable as a trademark because it was merely descriptive and had not acquired distinctiveness.
On April 29, 2010, the Bureau filed an application with the Secretary of State to register “ Visit Michigan City La-Porte’ and logo” as a trademark under the Indiana Trademark Act. In its application, the Bureau indicated that the mark was first used in commerce on September 9, 2009, and disclaimed any rights to the words “Michigan City” or “LaPorte.” The Bureau received a certificate dated May 13, 2010 indicating that “Visit Michigan City LaPorte” had been registered as a trademark with the Secretary of State. The certificate also indicated that the mark was first used on September 9, 2009, and the words “Michigan City LaPorte” had been disclaimed.
On May 26, 2011, the Bureau sent another cease-and-desist letter to Serenity, again asserting that Serenity was infringing its rights in the now-registered trademark. The Bureau attached a copy of the certificate of trademark registration to the letter and informed Serenity that the letter would be its final attempt to resolve the matter before taking legal action.
Serenity sent a response letter to the Bureau on June 1, 2010. In the letter, Serenity again asserted that it was the first party to use the mark in commerce, and argued further that the Bureau’s registration of the mark did not affect Serenity’s common-law rights to use the mark or confer retroactive trademark rights. Serenity stated that it was willing to assign the domain name to the Bureau if it could provide proof that it first used the mark in commerce on or *490 before September 9, 2009. Serenity argued that if the Bureau had not used the mark in commerce by that date, it had fraudulently misrepresented the date of first use on the application for trademark registration, which would result in cancellation of the registration.
On January 4, 2011, the Bureau filed a complaint against Serenity alleging trademark infringement, cybersquatting, and unfair competition. The Bureau also sought and obtained a preliminary injunction prohibiting Serenity from using the domain name. The matter proceeded to a bench trial on March 8, 2012, and the trial court entered judgment in favor of the Bureau on May 1, 2012. The trial court concluded that Serenity had violated Indiana law by committing trademark infringement and “cybersquatting that approaches cyber-piracy[.]” The trial court permanently enjoined Serenity from using the Visit Michigan City LaPorte designation or the domain name visitmichigancityla-porte.com, and further ordered Serenity to transfer the domain name registration to the Bureau.
(Citations and footnote omitted.)
In Serenity Springs I, we determined the designation “Visit Michigan City La-Porte” was not subject to protection because it was merely descriptive of the geographic location of the goods and services the Bureau promotes, and it had not acquired a secondary meaning through actual use of the mark prior to Serenity Springs’ first use. Id. at 325. As the Bureau had asserted additional claims, including common-law unfair competition, that the trial court had not yet addressed, we remanded. Id. at 327.
On remand, the trial court found Serenity Springs had committed seven common-law torts: common-law trade name infringement, a common-law tort based on Serenity Springs’ intent to deceive, common-law acts amounting to cy-bersquatting, unfair competition in the form of conversion of intangible value, tor-tious interference with a contract or business relationship, tortious behavior in the nature of “palming off,”[2] and general unfair competition. It permanently enjoined Serenity Springs from using the mark “Visit Michigan City LaPorte” or the domain name visitmichigancitylaporte.com. The case now before us is an appeal from the trial court’s decision on remand.
DISCUSSION AND DECISION
The trial court sua sponte entered findings of fact and conclusions of law. When the trial court enters such findings sua sponte, the specific findings control only as to the issues they cover, and a general judgment standard applies to any issue on which the court has not entered findings. Scoleri v. Scoleri, 766 N.E.2d 1211, 1214-15 (Ind.Ct.App.2002). In reviewing the judgment, we determine whether the evidence supports the findings and the findings support the judgment. Id. at 1215. We will reverse only when the judgment is clearly erroneous, ie., when it is unsupported by the findings of fact and conclusions entered on the findings. Id. For findings of fact to be clearly erroneous, the record must lack probative evidence or reasonable inferences from the evidence to support them. Id. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable *491 inferences to be drawn therefrom, and we will not reweigh evidence or assess credibility of witnesses. Id. A general judgment may be affirmed on any theory supported by the evidence presented at trial. Id.
1. Trade Name Infringement
The trial court first addressed “Tort in the Nature of Trade Name Infringement,” (App. at 6), determining “the Bureau’s brand is a trade name under which the Bureau conducts business” and the Bureau “made first use of the brand as a trade name and in so doing gave it value.” (Id. at 9.) As “Visit Michigan City LaPorte” is not a protectable trade name, there could have been no trade name infringement.
A trade name is “a word, name, symbol, device, or other designation, or a combination of such designations, that is distinctive of a person’s business or other enterprise and that is used in a manner that identifies that business or enterprise and distinguishes it from the businesses or enterprises of others.” Keaton & Keaton v. Keaton, 842 N.E.2d 816, 820 (Ind.2006) (quoting Restatement (Third) of Unfair Competition § 12). We determined in Serenity Springs I that “Visit Michigan City LaPorte” was not “distinctive”: “We have little difficulty accepting Serenity’s argument that the designation is primarily geographically descriptive of the goods and services with which it has been associated.... Accordingly, the mark must have acquired secondary meaning in order to be protectable.” 986 N.E.2d at 324.
We noted the Bureau presented no evidence that the mark at issue acquired secondary meaning before Serenity Springs began using it:
It is undisputed that Serenity purchased the domain name visitmichigancityla-porte.com on September 9, 2009 and immediately began using it to direct internet traffic to its main website on that date. The Bureau also claimed September 9, 2009 as the date of its first use of the mark in its application for trademark registration, and trial court found that the Bureau first used the mark in commerce on that date. Assuming ar-guendo that the trial court’s finding in this regard is supported by the evidence, the Bureau’s and Serenity’s first uses of the mark were virtually simultaneous. Secondary meaning is acquired through actual use of a mark, and there is simply no evidence in the record supporting a conclusion that the mark became associated with the Bureau in the minds of consumers on September 9, 2009 in the hours prior to Serenity’s registration of the domain name.
Id. at 326.
We decline to revisit our holding “Visit Michigan City LaPorte” is not protectable, as the question whether the phrase is “distinctive” was expressly adjudicated in Serenity Springs I. See, e.g., Indianapolis Downs, LLC v. Herr, 834 N.E.2d 699, 704 (Ind.Ct.App.2005) (former adjudication is conclusive as to issues actually litigated and determined therein in a subsequent action even if the two actions are on different claims), trans. denied. As there was no protectable trade name, the trial court erred in determining there was a “tort in the nature of trade name infringement.” (App. at 6.)
2. Unfair Competition
The trial court found Serenity Springs had committed six more torts it explicitly characterized as variants of unfair competition: a common-law tort based on Serenity Springs’ intent to deceive, common-law acts amounting to cybers-quatting, unfair competition in the form of conversion of intangible value, tortious interference with a contract or business rela *492 tionship, tortious behavior in the nature of “palming off,” and a “general unnamed tort of unfair competition.” (Id. at 32.) As the phrase “Visit Michigan City La-Porte,” had not become identified with the Bureau before Serenity Springs began using it, it was error for the trial court to find Serenity Springs’ use of the phrase was unfair competition.
In Serenity Springs I, we said this in addressing the Bureau’s trademark infringement claims:
This court has long held that the exclusive right to use a mark is acquired through adoption and use of the mark in commerce. See Johnson v. Glassley, 118 Ind.App. 704, 88 N.E.2d 488 (1949) (“[t]he mere adoption of a particular name as a trade name, without actual use thereof in the market, confers no right thereto, even though such adoption is publicly declared”); Hartzler v. Goshen Churn Ladder Co., 55 IndApp. 455, 104 N.E. 34(1914).
986 N.E.2d at 320 (emphasis added.)
Hartzler was an unfair competition action. Goshen Churn Ladder Company manufactured and sold a stepladder under the name “Security Ladder.” It alleged Hartzler
conspired to create a corporation which should have a pretended color of right to use the name ‘Security Ladder’ for the purpose of deceiving the public into the belief that they were the original makers ... of such ladders, and thus create, by means of the deception, an unfair and tricky competition in trade with [Gosh-en].
104 N.E. at 36.
There we noted:
The question to be determined in every case is whether or not, as a matter of fact, the name or mark used by defendant has previously come to indicate and designate plaintiffs goods, or, to state it another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiffs goods, or his business as plaintiffs business.
⅜ ⅜ ⅛: ⅞: ⅝ ⅜:
Even descriptive and generic names may not be used in such a manner as to pass off the goods or business of one man as and for that of another. Where such words or names by long use have become identified in the minds of the public with the goods or business of a particular trader, it is unfair competition for a subsequent trader to use them in connection with similar goods or business in such a manner as to deceive the public and pass off his goods or business for that of his rival.
104 N.E. at 38 (quoting 38 Cyc. 799-800) (emphasis added). As Serenity Springs bought and began using the domain name immediately after the Bureau announced it in a public meeting, the name could not have “previously come to indicate and designate [the Bureau’s] goods,” nor could it have, by “long use,” become identified in the minds of the public with the Bureau.
We acknowledge authority from other jurisdictions suggests a “single use” or an “initial use” is sufficient, e.g., Blue Bell, Inc. v. Farah Mfg. Co., Inc., 508 F.2d 1260, 1265 (5th Cir.1975) (use of trademark need not have gained wide public recognition and even a single use in trade may sustain trademark rights if followed by continuous commercial utilization). But even that standard is not met in the case before us; we have only the Bureau’s statement of its intention to commence using that phrase.[3] Serenity Springs’ ac *493 tions therefore did not amount to unfair competition, and it was error for the trial court to so hold.
As “Visit Michigan City LaPorte,” was not a protectable trade name and Serenity Springs’ use of it was not unfair competition, we reverse.
Reversed.
VAIDIK, C.J., concurs.
RILEY, J., concurs in part and dissents in part.

. We directed the trial court on remand to limit its consideration to evidence and claims the Bureau had already presented, and to receive no new evidence.

. The tort of "passing off” (also called "palming off”) is a species of unfair competition that emerged in the nineteenth century as a type of fraud. Keaton & Keaton v. Keaton, 842 N.E.2d 816, 819 (Ind.2006). Under this doctrine, liability is imposed for the intentional misrepresentation of goods or services as those of another. Id.

. The dissent would find the Bureau "established a bona fide initial use of ‘Visit Michigan *493 City LaPorte’ ” by "allocating funds to contract with a marketing firm and announcing the results in a televised meeting." (Op. at 495.) We decline to hold paying for a study and announcing its results amounts to even a single or initial "use in trade.”