RILEY, Judge,
concurring in part and dissenting in part.
Although I agree with the majority’s rather sparse analysis that Visit Michigan City LaPorte’ is not a protectable trade name and therefore no trade name infringement can exist, I respectfully dissent from its treatment of the Bureau’s common law unfair competition claim.
Unfair competition is generally defined as “the attempt to create confusion concerning the source of the unfair competitor’s goods.” Rader v. Derby, 120 Ind.App. 202, 89 N.E.2d 724 (1950). A claim for unfair competition can be instituted by a party who has acquired a trade name right designation against a party who subsequently used an identical or similar phrase. See Hartzler v. Goshen Churn Ladder Co., 104 N.E. 34, 37 (Ind.1914). But only a person who has applied a designation as a trademark first has priority in the use of the designation over another user. See Restatement (Third) § 19. In the case at bar, both the Bureau and Serenity claim priority usage rights in Visit Michigan City LaPorte.’
In its discussion of the Bureau’s claim based on unfair competition, the majority solely focuses on Hartzler, to reject a finding of unfair competition in Serenity’s conduct of buying and using the domain name immediately after the Bureau announced it during a public meeting. See Op. p. 492.
Hartzler, one of the first Indiana cases dealing with trademarks and trade names, was issued prior to the enactment of the federal and state trademark statutes. In this case, Goshen Churn & Ladder Co. (Goshen) brought an unfair competition claim against Hartzler, asserting that the name of Hartzler’s corporation was “wrongfully and unlawfully selected in the imitation of [Goshen’s] trade name ‘Security Ladder’ for the fraudulent purpose of deceiving the public and appropriating [Goshen’s] good will and reputation.” Id. at 36. Relying on “the general principles of the law of unfair competition as deduced from cases in other jurisdictions, and collected in textbooks,” the Hartzler court noted, as alluded to by the majority, the general rule that
A dealer coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the good or business of his rival.
[[Image here]]
Even descriptive and generic names may not be used in such a manner as to pass off the goods or business of one man as and for that of another. Where such words or names by long use have become identified in the minds of the public with the goods or business of a particular trader, it is unfair competition for a subsequent trader to use them in connection with similar goods or busi *494 ness in such a manner as to deceive the public and pass off his goods or business for that of his rival.
Id. at 38 (emphasis added). Ultimately, Hartzler concludes its recitation of these principles by declaring “[t]he question in every case is whether the defendant is in fact attempting to sell his goods as the goods of someone else.” Also, “[u]nfair competition is always a question of fact. The question to be determined in every case is whether or not, as a matter of fact, the name or mark used by defendant has previously come to indicate and designate plaintiffs goods, or, to state it another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiffs foods, or his business as plaintiffs business.” Id.
To this day, Hartzler, decided in 1914, is still good law. However, Hartzler dealt with advertisements and circulars. In the case at bar, we are called upon to evaluate domain names and internet registrations. In other words, Hartzler’s principles and “long use requirement” were enunciated in a time when men drove a cart and horse and life proceeded more slowly but they are difficult to apply to an era where messages can be sent at the speed of light and goods can be purchased by the push of a button. Although it is “frequently feasible to pour new wine into old legal bottles,” here, the old rule — albeit still valid — simply cannot keep up with the modern advances in technology. See Felsher v. University of Evansville, 755 N.E.2d 589, 599 (Ind.2001).
Despite my state — and nationwide research, no single similar case exists — even Indiana case law in general is extremely sparse with respect to trademarks, let alone trade names. Although factually some cases might come close, no court before us has dealt with the almost simultaneous registrations of domain names in the context of common law unfair competition.
In an effort to keep up with the modern advances in technology,[4] the Restatements and some out-of-state case law seem to move away from the rigid requirement to establish a “long use” in order to acquire priority of use in exchange for “[t]he bona fide nature of the use rather than its extent or frequency is determinative.” See Restatement (Third) § 18. Therefore, the “initial use of a designation can be sufficient to constitute bona fide commercial use if the circumstances indicate an intention to continue the use in the ordinary course of business.” See Restatement (Third) § 18; See also La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265 (2d Cir.1974) (The user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially.); Blue Bell, Inc. v. Farah Mfg. Co., 508 F.2d 1260, 1265 (5th Cir.1975) (Even a single use in trade may sustain trademark rights if followed by continuous commercial utilization.).
Within the context of trademarks, the Restatement (Third) § 18 notes as follows:
In the case of goods, trademark claims based on a use of the mark in advertising are typically raised in an attempt to *495 establish rights prior to the initiation of actual sales. The use of a designation in pre-sales solicitations, presentations, or other advertising can result in the creation of good will symbolized by the designation even before any actual sales. The case law, although not always denominating the user’s interest in a trademark, frequently recognizes in such circumstances the user’s right to protection against unfair competition resulting from a use of the designation by another. [ ] Such pre-sales activity can qualify as a trademark use if the use is calculated to produce the required association between the mark and the user’s goods and is done in the user’s ordinary course of business.
In light of this emerging move away from the rigid adherence to a “long established use” of the trademark or trade name, I would consider the Bureau’s bona fide use of the domain name during the ordinary course of its business.
Although acknowledging this new trend in the case law, the majority rather nonchalantly declared in its opinion that “even that standard [of single use] is not met in the case before us; we have only the Bureau’s statement of its intention to commence using that phrase.” Op. p. 492. Rather than relying on the heavily sanitized version of the facts used by the majority but instead considering the actual record before me, I find that the evidence reflect otherwise. The Bureau presented that it contracted with a private marketing firm in early 2009 to conduct a branding study for the purposes of identifying new and better ways to promote tourism in the area. On the morning of September 9, 2009, the Bureau held a televised public meeting, pursuant to its compliance with the Open Door provisions, during which it announced the results of its branding study and introduced the public to ‘Visit Michigan City LaPorte’ as its unique identifier. Jack Arnett, the Bureau’s director, testified that a marketing campaign of the phrase would begin immediately after the public meeting by securing the domain name, changing letter head and visitors guides, and employ the services of the local radio stations and newsletters. In fact, the record reveals that business cards and visitor guides had already been prepared with the new designation in anticipation of the Bureau securing the rights to ‘Visit Michigan City LaPorte.’ It is furthermore undisputed that Serenity purchased the domain name ‘visitmichi-gancitylaporte.com’ immediately upon the Bureau’s unveiling on September 9, 2009 and instantaneously began using it to direct internet traffic to its main website.
By following internal protocol in allocating funds to contract with a marketing firm and announcing the results in a televised meeting in compliance with the Open Door provisions, the Bureau established a bona fide initial use of ‘Visit Michigan City LaPorte’ during its ordinary course of business calculated to project to prospective tourists “the significance of the designation as an identifying symbol.” Restatement (Third) § 18. A subsequently planned marketing campaign sufficiently marked the beginning of commercial exploitation of the identifying phrase. See Restatement (Third) § 18 (use of a designation in the various advertising media can now establish the designation’s significance as an identifying symbol as surely as its appearance on packaging or labels). Only after the unveiling of the designation, but still during the on-going meeting, did Serenity purchase the rights of the corresponding domain name. Use of a designation merely to frustrate the marketing plans of another seller who is preparing to use a similar mark is not a bona fide use in the ordinary course of business. Restatement (Third) § 18. For these reasons, I *496 conclude that priority of use in ‘Visit Michigan City LaPorte’ lies with the Bureau.
Moreover,
[i]n order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by the defendant’s conduct and led to purchase his goods in the belief that they are the goods of plaintiff, or to deal with' defendant thinking that he was dealing with the plaintiff. It is sufficient to show that such deception will be the natural and probable result of defendant’s acts. But either actual or probable confusion must be shown, for if there is not probability of deception, there is no unfair competition.
Hartzler, 104 N.E. at 37-38 (emphasis added). While the parties did not present any evidence that visitors attempting to access the Bureau’s website were actually deceived into visiting Serenity’s website and purchasing a vacation package, Serenity’s availment of this particular domain name nevertheless poses the risk of a “probability of confusion.” See id.
By registering the domain name ‘visitmi-chigancitylaporte.com’ and linking it to its website, Serenity ensured that Web surfers searching for information about the diverse attractions and accommodations located in LaPorte County and promoted by the Bureau were diverted to Serenity’s own Web page instead. Laura Ostergren, Serenity’s proprietor, testified that the company developed a three-day guest package stay which was linked directly to the domain name and “which encouraged people [ ] to do [things] in the area.” (Appellant’s App. p. 55). The page also included a link to the Bureau’s website as well as to Harbor Country, the neighboring county.
Based on the timing and circumstances of the acquisition of the domain name by Serenity, a reasonable inference can be made that Serenity’s strategy was to divert internet traffic away from the Bureau’s website, which contained links and recommendations to Serenity’s competitors, by having potential vacationers view Serenity’s accommodations first. To make the confusion even more outspoken, Serenity included links on its website to the natural attractions of the area and neighboring county, much like the ones found on the Bureau’s website. Thus, instead of comparing and contrasting all available accommodations in LaPorte County, Serenity’s web site deceived the potential vacationer into purchasing its vacation from Serenity. By appropriating the Bureau’s trade name and linking it to its own website, Serenity created this probable confusion and deception and consequently committed unfair competition with the Bureau. I would affirm the trial court’s finding of unfair competition in favor of the Bureau.
In light of Indiana’s sparse and outdated case law, I would urge our Legislature and supreme court, if the opportunity arises, to look beyond the man and cart method promoted by Hartzler and approved by an out-of-touch majority, and instead usher Indiana into the technological realities of the 21st Century by formulating tools appropriate to handle the complexities of the internet’s realm.

. Similar efforts have been made in the area of trademark law. Until 1988, the federal trademark statute made "actual use” a prerequisite to protection. However, the 1988 amendments to the Lanham Act recognized the acquisition of rights prior to the actual use if the person "has a bona fide intention [ ] to use a trademark in commerce.” (Restatement (Third) § 18). See, e.g., 15 U.S.C.A. § 1057(c) which provides that the filing of an application for registration constitutes "constructive use” of the mark.