## MINAS FURNITURE COMPANY *v.* EDWARD C. MINAS COMPANY

[No. 13,205. Riled February 23, 1929. Rehearing denied May 17, 1929. Transfer denied April 27, 1933.]

*Frederick C. Crumpacker* and *Edwin H. Friedrich,* for appellant.

*Tinkham & Galvin,* for appellee.

NICHOLS, J.—Appellee is an Indiana corporation operating a department store in Hammond. From its several departments it sells all lines of merchandise known to the retail trade, except groceries and meats. Appellant is an Indiana corporation operating a store in Hammond and one at Gary and selling at retail, furniture, carpets and rugs and a limited amount of house furnishings. Appellee claiming a prior right to the use of the name "Minas," brought this action to enjoin appellant from the use of the word in its corporate name, and from alleged unfair trade competition and for damages for alleged invasion of its rights.

The complaint, in one paragraph, is answered in three paragraphs, denial and two affirmative paragraphs. The third paragraph, to which a demurrer was sustained, pleads laches and estoppel.

The court found its facts specially and stated its conclusions of law, on which it rendered its decree, permanently enjoining appellant from the further use of the name "Minas" in any manner in connection with its business in the city of Hammond. From this decree, this appeal, appellant assigning as error the court's ruling sustaining appellee's demurrer to the third paragraph of answer, in overruling appellant's motion for a new trial, and in the first and fourth conclusions of law.

The special findings cover more than fifty pages of the record. It appears by them, briefly stated, that Edward C. Minas, in 1890, purchased a small hardware store and business, on the southeast corner of State Street and Oakley Avenue in Hammond. That same year, his brother, Emil Minas entered his employment as a clerk. Edward C. Minas, in 1894, moved his business into a new and larger building erected by him on the south side of State Street about 300 feet west of his former location. Immediately on moving into his new location he added paints and oils to his general hardware stock, and at the same time he added furniture and house furnishings and devoted the second floor of the new building to their display and sale. The third floor was rented for about one year when he took it over and used it in connection with his furniture, household furnishings, rug and carpet business.

Emil remained in the employ of Edward for about a month after Edward had entered the retail furniture business when he resigned and shortly went into the second-hand furniture business with one Dixon as a partner, on the south side of State Street, about 200 feet east of Oakley Avenue.

From the beginning until March 21, 1903, Edward was the sole owner of the business which he conducted in his own name as Edward C. Minas or E. C. Minas. On March 21, 1903, he incorporated appellee company, under

the laws of Indiana, and transferred his business and all its assets, and appellee company has continued to carry on said business at the location described.

The company is empowered under its articles of incorporation to engage in the sale of any and all kinds and classes of merchandise at retail. Edward C. Minas has been president and managing officer continuously since its organization. It was capitalized for $25,000, which was increased June 27, 1912, to $125,000, and on January 3, 1918, to $375,000. All the stock is common and has been, at all times, owned and held exclusively by Edward C. Minas and the members of his immediate family. E. Clarence Minas, a son, is vice-president, and a daughter, Lucile Jenson, is its secretary.

Other lines of merchandise, including dry goods, men's clothing, and ladies' clothing, have been added and the business has been commonly known as a department store. Appellee has, at all times since first added, carried in its stock of merchandise, furniture, house furnishings, rugs, carpets and queensware.

New additions have been made to the building until now there is in effect, one building with 175 feet of frontage on State street and consisting of three stories and a basement, and since 1913 appellee has occupied this entire structure for the purpose of conducting its department store. The entire third floor is occupied by the furniture department and has been for several years past. The easterly 75 feet of the second floor is occupied by the rug and carpet department, while queensware and other lines of house furnishings are carried in other departments of the store. Appellee employs about 125 men and women, of which, 24, exclusive of drivers, are in the furniture, carpets, rugs, house furnishings and queensware departments.

The findings disclose that appellee's place of business is located substantially in the center of the business dis-

trict of the city of Hammond, which city is surrounded by cities and towns within easy access thereto by steam roads, steam cars, electric cars, street cars, bus cars and automobiles, with a total population in round numbers of about 300,000 people, and many of these bus lines make regular stops at appellee's store. Prior to the establishment of these bus lines appellee company operated a bus service connecting with the towns to the south and west with the name Edward C. Minas Company on such busses. Appellee advertised its business in newspapers and on billboards using the name "E. C. Minas" or "Edward C. Minas" Company. Such advertising was circulated throughout the territory surrounding Hammond, and carried matters with reference to house furnishings, furniture, rugs and carpets. Such advertisements have been continued. Appellee has an advertising mailing list of 24,000 names covering the Calumet region and expended in 1910, $5,000 for advertisements, which amount has gradually increased until it is now from $35,000 to $40,000 a year. In divers other matters it appears that appellee has advertised in the name of "E. C. Minas Company" or "Edward C. Minas Company." The total receipts of its business for the year 1925 were more than $1,000,000.

As heretofore stated, in 1895, Emil Minas went into the secondhand furniture business at a location about 200 feet east of Oakley avenue, and on the south side of State street, and thereafter so continued with successive and divers changes of partners, and a part of the time alone. The name "Minas" in naming the respective partnerships was used along with the names of the respective partners. During all of this time the store had continued to be operated as a secondhand furniture store, some new furniture having been purchased at times for the purpose of filling in pieces of furniture that were missing in the stock, and some new furniture having been pur-

chased at auction sales or from lines that were out of style. In 1907 or 1908, Emil Minas purchased the building occupied by the store and erected a new brick building, the same being completed in 1909, and he occupied it with his business. He continued to occupy the business under his own name until May 25, 1910, when he sold the business to Maurice L. Greenwald. Prior to this sale the business had not been incorporated at any time, and the name "Minas Furniture Company" was never used in connection with the business of Emil Minas, either while he was operating alone under his own name, or with any one of his various partners.

Edward C. Minas was engaged in the business of handling furniture at least several months before Emil went into the business of handling secondhand furniture.

The line of business in which Emil Minas was engaged while in the furniture business, was not the same line of business in which Edward C. Minas Company were engaged so far as the handling of furniture was concerned during the same time. Emil Minas catered to the purchasers of secondhand furniture; Edward C. Minas and the Edward C. Minas Company handled new furniture exclusively. There was no competition between the business done in the furniture trade by Edward C. Minas and the Edward C. Minas Company, on the one hand and Emil Minas on the other.

Edward C. Minas began the use of the name "Minas" in connection with the handling of new furniture in Hammond and vicinity in the year 1894, and continued the use of that name until 1904, when the Edward C. Minas Company was incorporated and succeeded to the business of Edward C. Minas. The Edward C. Minas Company continued the use of the name "Minas" in connection with the handling of new furniture in Hammond and vicinity from 1904 on to the present time. No other person, firm or corporation used the name "Minas" in connection with

the new furniture business until appellant began to use the name in 1911.

When said Emil Minas sold his business to Maurice L. Greenwald on May 25, 1910, he executed a bill of sale, in which it was stipulated *inter alia* that he sold the good will of his business, which consisted in the use of his name in the conduct, operation, carrying on, and transacting of said furniture business, at said premises or at any other place in the city of Hammond.

On the same date, and as a part of the same transaction, Emil Minas and Maurice L. Greenwald entered into a written agreement that a corporation to be named "Minas Furniture Company" should be formed to which the business and everything pertaining thereto was to be sold and transferred, Minas agreeing to purchase one-third of the stock, and after one year to sell such stock to Greenwald at a reasonable price, and agreeing thereafter not to engage in a business of a like nature. At the time of the sale, the stock inventoried $6,500, of which about 20 per cent was new furniture.

Upon the incorporation of Minas Furniture Company, one-third of the stock therein was issued to Emil Minas and he was employed by Greenwald as a clerk in the store until about December 31, 1911. After purchasing the store, Greenwald, and afterward the corporation, operated it at the same location until 1922.

After the sale appellant discontinued the further handling of secondhand furniture and has confined itself exclusively to new furniture, carpets and rugs. It sells stoves, kitchen cabinets, and some dishes or queensware in complete sets in connection with the sale of dining room suites, and its merchandise is of the same general character as that sold by appellee from its furniture, carpet and rug departments.

Emil Minas sold his stock in the Minas Furniture Company to one of the Greenwald Brothers in 1911; on No-

vember 22, 1911, Emil Minas entered into a contract with the Minas Furniture Company, in which he confirmed the sale of the goodwill of his business to appellant.

Since 1911, Emil Minas had not been employed by the Minas Furniture Company, appellant, has not been a stockholder, director or officer of that company, has not been interested in the corporation in any way, directly or indirectly, nor has any one by the name been so interested. Since 1911, all of the stock of the Minas Furniture Company has been owned by three Greenwald brothers, and they have been the active managers thereof.

After the incorporation of the Minas Furniture Company, an electric sign with the words "Minas Furniture Company," on it was placed in front of the store, and the corporation began to advertise under its corporate name, and has continued to do so down to the present time. In practically all of its newspaper advertising, the name of the corporation containing the word "Minas" is displayed in large type, and in some of the advertising, the word "Minas" has been printed in larger type than the other words of the corporate name and the other portions of the advertisement. The Minas Furniture Company gradually expanded the lines of merchandise handled by it and for several years has handled furniture, stoves, kitchen cabinets, rugs, carpets and queensware and, in 1922, it occupied a new building erected at the northwest corner of State street and Oakley avenue in Hammond. The gross business in this store in 1925, was $188,738.15.

The Minas Furniture Company opened a second store in the city of Gary on September 29, 1925, where it occupies three floors and a basement of a building 50 feet in width by 125 feet in depth, similar in construction to the building occupied by it in Hammond. The Gary store is not involved in this appeal.

Since occupying the present location of the Hammond

store and since opening the Gary store, the Minas Furniture Company has displayed in front of each of these stores a large electric sign with the word "Minas" in a horizontal position at the top of said sign, and the word "Furniture" in a vertical position below the word "Minas," and the letters "Co." in a horizontal position at the bottom of said sign. These signs are illuminated at night.

In the conduct of its business appellee buys a large amount of furniture, carpets, rugs and merchandise sold in its furniture, carpet and rug departments. Its furniture is bought from various manufacturers in different parts of the country. Appellant likewise buys a large amount of merchandise from various manufacturers and dealers.

There have been frequent and numerous instances of confusion in shipments and accounts between manufacturers and dealers selling merchandise to both appellee and appellant in Hammond, from various cities in the United States outside the city of Hammond. Frequently shipments of merchandise intended for one of the parties will be made to the other, and statements of account from the manufacturer or dealer have, on numerous and frequent occasions, been submitted to one party when intended for the other. This confusion is, in the main, due to the similarity of the name of appellee and appellant, the name "Minas" being prominent in the corporate and trade name of each, and to the further fact that both are located in the city of Hammond and serve the buying public in the so-called Hammond district. This confusion has been in the past and will continue to be in the future, a source of considerable loss, inconvenience and delay in the efficient transaction of business by appellee company.

Appellee has a large number of customers who buy merchandise on contract or monthly account. It carries more than 4,000 accounts with such customers, involving

daily transactions. Many other customers make purchases from appellee daily for cash. Appellant likewise has a large number of customers who buy for cash or on account, or on monthly credit. These customers are from the same trading public. The similarity of the name of Edward C. Minas Company and Minas Furniture Company, and the proximity of location, have resulted in the numerous and frequent instances of confusion on the part of the general buying public in the Hammond district. In many instances buyers have gone to the Minas Furniture Company and have dealt with and purchased goods from that company, believing it to be connected with or a part or department of appellee's store. Frequently customers attempt to pay bills at one store which are due at the other store, or will order goods by telephone from appellant thinking they are ordering from appellee. Many people have inquired at appellant's store for trading stamps in the belief that it is a part of and connected with appellee's store, where stamps are given with purchases. The confusion is due, in the main, to the presence of the name "Minas" in the corporate name of both parties and to proximity of location. This confusion is of sufficient proportion to be a source of great annoyance, inconvenience and embarrassment and considerable loss to appellee company.

Clerks and salesmen of appellant have failed to inform customers of the fact that there is no relation between the two stores, when such salesmen or clerks knew the customers were laboring under the impression and belief that they were dealing with appellee, and by their actions and by silence, in some instances, have fostered and encouraged that mistaken belief in order to make sales. On occasion, certain well known lines of merchandise carried by appellee, have been represented by appellant's clerks as discontinued in order to sell appellant's merchandise to customers who were under the impression

that they were dealing with appellee. There has been no active or constructive fraud on the part of the officers of appellant company, but its employees, in their zeal to make sales, have, on a number of occasions, been guilty of conduct as above indicated.

At the time Greenwald bought the business, goodwill and name of Emil Minas, his business had no goodwill in connection with the new furniture business. He was known to the trade and to the buying public as a dealer in secondhand furniture and out of date or dropped lines of new furniture to a limited extent, and whatever goodwill he had was in connection with the secondhand furniture business. At that time Edward C. Minas had spent a large sum of money advertising and by honesty, integrity and fair dealing, and through the quality of the goods handled, had gained a wide reputation as a dealer in honest and high grade merchandise. Whatever value the name "Minas" had in connection with the new furniture business in Hammond at that time was due to the money and effort spent by Edward C. Minas and appellee company, and not at all to any good will attaching to the name of Emil Minas. Largely for this reason and to make sure of their right to use the name "Minas," the Greenwald brothers procured Emil Minas to be one of the incorporators of the Minas Furniture Company with a definite agreement that the said Emil Minas would sell his stock in said corporation within one year after the organization thereof. This was done primarily for the purpose of trading on the goodwill built up in connection with the new furniture business by Edward C. Minas and the Edward C. Minas Company.

Upon the foregoing facts the court stated its conclsions of law as follows: the law is with appellee and it is entitled to a permanent injunction restraining appellant from the further use of the name "Minas" in any manner in connection with the conduct of its business

from and in any store owned, controlled or operated by appellant in the city of Hammond, and that as to the store in Gary, the law is with appellant, but appellee has not assigned cross-error. There is also a conclusion that appellee is guilty of laches and, therefore, entitled to nothing in the way of damages, but no cross-error is assigned as to this conclusion.

From these findings, and they are each and all supported by an abundance of evidence, it is apparent that there was great confusion in the conduct of the business of appellee company growing out of the use of the word "Minas" by the appellant company, in the manner in which it used the same, and the proximity of the business of appellant company, as finally located, to that of appellee company, and this confusion was accentuated by the fact that another department store in the same trade community had its main store upon one side of the street and its furniture store opposite thereto and across the street. It clearly appears that annoying mistakes were made by wholesalers and manufacturers in orders and shipments, and that goods intended for appellee company were received by appellant company from time to time, and that for goods ordered for appellant company, the statements therefor were received by appellee company to its annoyance. It further appears by the findings, which, as aforesaid, are supported by abundant evidence, that there was much confusion among the local customers of appellee. It appears by the evidence supporting these matters that it was a matter of common, we may say almost daily occurrence, that customers of appellee were misled and deceived because of the similarity of the names of the two companies, and the fact that they were located in such close proximity. It is appellant's contention that it had equal rights with appellee to use of the name "Minas," for the reason that Maurice L. Greenwald had purchased the business from Emil Minas

along with his goodwill, but this goodwill did not include the new furniture business for it appears by the findings as well as by the evidence, that Emil Minas was in the secondhand furniture business until the time of the sale of his stock, that he was known as a secondhand furniture dealer, and that he only handled such new furniture as was necessary to fill in. It appears by the findings that there was no importance attached to the name "Minas" because of the business that was conducted by Emil Minas, but that any importance that was attached to such name grew out of the years of advertising and merchandising in the new retail furniture line, as conducted by Edward C. Minas and appellee company. Greenwald and appellant company recognized the importance and value of this trade name, by the contract made with Emil Minas by which he held stock for a year in appellant's company with an agreement to sell the same at the end of a year thereby giving appellant an excuse or subterfuge for using such name. If Greenwald attached no value to the use of the name, then why was his company named "Minas Furniture Company" instead of "Greenwald Furniture Company?" The construction of the electric signs in front of appellant's place of business with the word "Minas" in large letters and in a horizontal position at the top of the sign, and, as appears by the evidence, similar to an electric sign of appellee company as to the name "Minas," shows, as it seems to the court, that appellant attached much importance to the use of such name as a trade name, and that it was using the same for the purpose of deceiving the people, and thereby enticing them to its place of business.

It is a well established rule that a corporation must not by any artifice deceive the public so that its goods may be sold for those of a corporation having a similar trade name, and no name may chosen in naming a corporation that will cause it to be passed off

as another corporation already in existence, or that will enable it to dispose of its goods as those of some other company. The general principles which are substantially of controlling force in this case are set forth in *Hatzler* v. *Goshen, etc., Co.* (1914), 55 Ind. App. 455, 104 N. E. 34, and it would be a needless repetition for us to again set them out here. In harmony with the principles there announced; and the facts as here found, we are clear that the equities are with appellees, and that appellants should be enjoined from the further use of the name "Minas" in any manner in the further conduct of its business in any store owned, controlled or operated by it in the city of Hammond.

The court states as a conclusion of law, that appellee was guilty of laches, and therefore is entitled to nothing in the way of damages. While there was a prayer in the complaint asking for $25,000 damages, there was no effort by appellee to prove its damages, but there is no conclusion of law that appellee may not have an injunction because of laches. Mere delay or acquiescence cannot defeat a remedy by injunction unless continued so long, and under such circumstances as to defeat the right. As was said in *Menendez* v. *Holt* (1888), 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526:

"Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself. Hence, upon an application to stay waste, relief will not be refused on the ground that, as the defendant had been allowed to cut down half of the trees upon the complainant's land, he had acquired by that negligence, the right to cut down the remainder. . . . . Nor will the issue of an injunction against the infringement of a trade-mark be denied on the ground that mere procrastination in seeking redress for depre-

534

dations had deprived the true proprietor of his legal right. . . . Acquiescence to avail, must be such as to create a new right in the defendant. . . . Where consent of the owner to the use of his trade-mark by another is to be inferred from his knowledge and silence merely, 'it lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license.' "

Appellant presents that where the right to a trade name is not clear, long acquiescence on the part of the plaintiff will prevent his obtaining an injunctive relief, further presenting that his acquiescence amounts to an estoppel, if it has been long continued, and others, acting in good faith, have made investments and acquired rights, during the period of plaintiff's delay, making it inequitable to grant relief But here, under the findings, and the evidence, appellee's rights were clear, and the methods employed by the Greenwalds by which they acquired their alleged right to use the name "Minas" do not commend them to the court. They appreciated the value of the trade name, and must have understood that such value was the result of the effort and business integrity of Edward C. Minas and appellee company. With this knowledge, they undertook by questionable methods to gain the right to use the name. The doctrine of estoppel can only be invoked to promote fair dealing. *Juan F. Portuondo Cigar Mfg. Co.* v. *Vicente Portuondo Cigar Co.* (1908), 222 Pa. 116, 70 Atl. 968.

Even if the court erred in sustaining appellee's demurrer to the third paragraph of answer, such error was harmless for it appears by the findings that there was no laches or estoppel of which appellant could have the advantage. *Phoenix Ins. Co.* v. *Jacobs* (1899), 23 Ind. App. 509, 55 N. E. 778.

We find no reversible error. Affirmed.