## MAYO CLINIC AND ANOTHER v. MAYO'S DRUG AND COSMETIC, INC.

113 N. W. (2d) 852.

March 2, 1962—No. 38,380.

*Fleming & Nelson,* for appellant.
*Dorsey, Owen, Barber, Marquart & Windhorst* and *Henry Halladay,* for respondents.

Frank T. Gallagher, Justice.
Appeal from an order of the district court which denied the motion

of defendant for amended findings or, in the alternative, for a new trial.

On May 2, 1957, Mayo L. Priebe, Sr., and two others became incorporators of Mayo's Drug and Cosmetic, Inc., defendant here. In October 1957 plaintiffs brought this suit to enjoin said defendant from the use of the name "Mayo" and all of its variants. After a hearing commencing November 25, 1957, on an order to show cause why a temporary injunction should not be issued, the trial court ordered a temporary injunction on June 14, 1958. After a further hearing, a permanent injunction was ordered on November 10, 1959. Thereafter defendant moved for amended findings or a new trial, the trial court denied the motion, and defendant appealed.

The trial court found, among other things, that one of the plaintiffs, Mayo Clinic, is a voluntary association of individuals engaged in the group practice of medicine at Rochester, Minnesota; that the other plaintiff, Mayo Association, is an eleemosynary corporation[1] organized under the laws of the State of Minnesota with its office at Rochester; that Mayo Association is the owner of all the assets and properties used by Mayo Clinic and devotes its funds and properties to the following purposes—charitable, scientific, and educational aims for the relief of human illness, the advancement of research as to the cause and prevention of disease, medical education, and such welfare movements as are correlated with health problems; that Mayo Association is the owner of the name "Mayo" and all variants thereof as it or they relate to the practice of medicine and to the general purposes for which the Mayo Clinic and the Association exist, and with respect to related matters including the vending or dispensing of drugs, medicines, pharmaceutical products, and similar or allied items; that the name "Mayo" has been and is now used by the Mayo Clinic with the specific consent of the Mayo Association; that plaintiffs have had and now have dealings not only with the public as patients or prospective patients, but with the public generally and members of the medical, dental, and

[1] "A corporation organized for charitable purposes—contrasted with *civil corporation*." Webster's Third New International Dictionary (1961) p. 733.

veterinary professions and also with manufacturers and other suppliers of drugs, medicines, cosmetics, and other products related to plaintiffs' affairs.

The court further found that the defendant, Mayo's Drug and Cosmetic, Inc., is a corporation organized in May 1957 under the laws of the State of Minnesota with its principal office and place of business in Rochester, Minnesota; that it was organized for the purposes, among others, to pack, distribute, and sell drugs, medicines, and cosmetics for resale or for use or prescription by licensed physicians, dentists, and veterinarians; that since its incorporation, defendant has caused to be advertised, marketed, and offered for sale certain of its wares known as "Mayos A-Wake Tablets," "Mayo-Cin," and "Mayos Lotion" within the State of Minnesota, particularly in proximity to Rochester, Minnesota, and that it intends to broaden and expand such activities throughout the State of Minnesota and elsewhere.

The court also found that the plaintiffs had and now have an exclusive right and a protectible interest in the name "Mayo" and that said name has a special significance in the practice of medicine and in all related matters thereto, including vending and dispensing of drugs, cosmetics, and pharmaceutical products in the vicinity of Rochester and throughout the State of Minnesota and other states in the Union; that the name "Mayo" and all variants thereof are associated by the public with plaintiffs; that the defendant's use of the word "Mayo," "Mayos," or "Mayo's" or any variant thereof singly or in combination or as a part of the corporate name or otherwise as a business name, or in any other way in connection with advertising, labeling, or its business or affairs, if not restrained, tends to confuse, has confused, and will confuse and mislead the public and the users and prospective users or others dealing with the plaintiffs' services or facilities; that the defendant in a search for the most effective ways to sell its wares seized upon and appropriated the name "Mayo" and variants thereof for the purpose of trading upon and obtaining the advantage of plaintiffs' name, reputation, integrity, honor, and prestige, and that the methods whereunder defendant acted and intends to act have been and are designed to convey and have conveyed to the public the false impression that defendant's wares and activities were and are attributable

to, authorized, made, or sanctioned by plaintiffs or that defendant and its wares and activities were and are affiliated with, sponsored, or approved by the plaintiffs; that, as a result of defendant's wrongful and improper use and appropriation of the names "Mayo," "Mayos," and "Mayo's" or variants thereof in its corporate name or in connection with its wares, advertising, and business, irreparable injury and damage has been and will be caused to the plaintiffs' good name, reputation, honor, integrity, and prestige, which damages are not and cannot be calculated or ascertained either among members of the medical profession, allied or related fields, or among members of the lay public, including patients and prospective patients of or otherwise dealing with the plaintiffs.

The court concluded that the plaintiffs were without adequate remedy at law and were entitled to a permanent injunction.

Defendant admits in its answer that the Mayo Clinic is world renowned for its endeavors and activities in the practice of medicine and surgery, including research and education in the field of medicine and allied arts and sciences. The primary contention of the defendant on appeal is that, although the name "Mayo" has special significance in the practice of medicine, it has no such significance in the exact area of the business of defendant, which is advertising and marketing over-the-counter drugs and lotions. The defendant, therefore, argues that plaintiffs cannot be entitled to an injunction restraining it from using the name "Mayo." It also argues that plaintiffs have not proved that the ordinary purchaser has been, or is reasonably likely to be, deceived to the detriment of the plaintiffs or the public as to the true identity of the goods involved.

■ In general, one has the right to use his own name in connection with his trade or business. 87 C. J. S., Trade-Marks, etc., § 107a. There can be no exclusive appropriation, generally, of a family surname so as to constitute it a valid technical trade-mark. Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. 198 Minn. 276, 269 N. W. 633, 107 A. L. R. 1276, and cases cited. If he acts in good faith, a person may transfer either his surname or his given name to a corporation he has founded. Howards Clothes, Inc. v. Howard Clothes Corp. 236 Minn. 291, 52 N. W. (2d) 753.

However, names often acquire secondary meanings by becoming closely associated with a given business. In such cases, a person of the same name cannot subsequently use his name in the same business in a way which would probably result in deception of the public. 87 C. J. S., Trade-Marks, etc., § 107b; Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. *supra*. The question then is whether the use of the name "Mayo" or variants thereof by the defendant is likely to convey the secondary meaning. 87 C. J. S., Trade-Marks, etc., § 90.

Defendant concedes that the name "Mayo" has a secondary meaning in the practice of medicine, but argues that there is no such meaning in the field of drug and cosmetic sales. The remedy for unfair competition is not so narrowly confined. As stated in Triangle Publications, Inc. v. Rohrlich (2 Cir.) 167 F. (2d) 969, 972:

"It is settled law that a plaintiff who has established a right to a trade name which * * * has acquired a secondary meaning is entitled to protection of his reputation against the use of that name by others even upon noncompeting goods, if the defendant's goods are likely to be thought to originate with the plaintiff."

It is enough if plaintiff has proved that the use of the name by defendant produces a likelihood of confusion on the part of the public. Metropolitan Life Ins. Co. v. Metropolitan Ins. Co. (7 Cir.) 277 F. (2d) 896, 900; 87 C. J. S., Trade-Marks, etc., § 92. There is testimony here from which a court could reasonably determine that there was a likelihood of such confusion. For example, one witness for plaintiffs testified that after buying some Mayo-Cin she offered them to a friend who asked for some aspirins; the friend told her, "Well, they seem like a good reliable firm, it has the Mayo name on it," to which the witness replied, "I suppose it must be Mayo Clinic." Staff doctors of plaintiff Mayo Clinic testified that they had received inquiries about defendant's products. One said that several of his patients asked him about Mayos Lotion and "whether we were promoting a lotion." Another testified that before this lawsuit began it came to his attention that a product known as "Mayocin" or "Mayos Aspirin" was being offered when a patient who was advised to take aspirin inquired, "Is the new Mayo type of aspirin better than Bayers or any of the others?" The

doctor said that he assured his patient that there was no Mayos aspirin issued by the clinic. A psychiatrist, testifying as an expert in behalf of plaintiffs, said that the name "Mayo" was associated in the public mind with doctors and drugs and that individuals would tend to link the products of defendant with the Mayo Clinic.

■ Before plaintiffs are entitled to an injunction however, they must prove some detriment or damage to themselves or to the public. Howards Clothes, Inc. v. Howard Clothes Corp. *supra.* It is more or less common knowledge that most unfair competition cases involve competing business interests, usually requiring proof of financial detriment. However, the protection of the law of unfair competition is not limited to profit-making corporations. As stated in 1 Nims, Unfair Competition and Trade-Marks (4 ed.) § 86:

"An eleemosynary or charitable corporation which sells no goods is nevertheless under the protection of the law of unfair competition. Distinct identity is just as important to such an organization, oftentimes, as it is to a commercial company. Its financial credit—its ability to raise funds, its general reputation, the reputation of those managing and supporting it, are all at stake if its name is used by some other organization and the two become confused in the minds of the public."

In Cornell University v. Messing Bakeries, 285 App. Div. 490, 138 N. Y. S. (2d) 280, affirmed, 309 N. Y. 722, 128 N. E. (2d) 421, Cornell University sued to enjoin the defendant from using the name "Cornell" as a bread label. In upholding a decree for the plaintiff, the court stated (285 App. Div. 492, 138 N. Y. S. [2d] 282):

"The theory underlying injunctive interference is that an educational institution which has won large public prestige by hard effort and at high cost ought not, against its will, have that prestige diluted by a commercial use of its name, suggesting connection or benefit to the institution from the enterprise."

Furthermore, the law of unfair competition is not designed merely to protect the plaintiff but also to prevent confusion and deception of the public. Howards Clothes, Inc. v. Howard Clothes Corp. 236 Minn.

291, 297, 52 N. W. (2d) 753, 758. As stated in Aetna Cas. & Surety Co. v. Aetna Auto Finance, Inc. (5 Cir.) 123 F. (2d) 582, 584:

"* * * where as here it plainly appears that there is a purpose to reap where one has not sown, to gather where one has not planted, to build upon the work and reputation of another, the use of the * * * distinguishing mark of another, is in its nature, fraudulent and will be enjoined."

It is especially important to avoid confusion on the part of the public when medicines and drugs are involved. Cole Chemical Co. v. Cole Laboratories (E. D. Mo.) 118 F. Supp. 612, 617.

From our examination of the record it appears to us that plaintiffs have established their right to relief against the defendant. It should be mentioned in passing, however, that ordinarily a plaintiff might be adequately protected by an injunction ordering the defendant to use the name only with such information and precautions as would unmistakably remove any connection with the plaintiff. Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. *supra*. However, it is within the discretion of the trial court to shape the remedy to the situation before it, and it may absolutely prohibit use of the name when it is necessary "to prevent probable deceit of buyers." Annotation, 150 A. L. R. 1067, 1133. In an unfair competition case, based on an alleged infringement of a trade name, the findings of the trial court must be sustained unless, taking the view of the entire evidence most favorable to the prevailing party, such findings are manifestly and palpably contrary to the evidence as a whole. Howards Clothes, Inc. v. Howard Clothes Corp. *supra*.

This case involves what appears to be such an obvious attempt to capitalize on a famous name known the world over for plaintiffs' developments in medical, surgical, and kindred fields for the relief of human sufferings, that it is our opinion that the order appealed from should be affirmed.

In so affirming we are not saying that any person whether humble or famous has not the right to honestly use his own name for any business open to him. Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. *supra*. We are, however, saying that in doing so, such a person

cannot unfairly use the trade name of another or a confusing simulation thereof (even without fraudulent intent) whereby an ordinary purchaser has been or is reasonably likely to be deceived as to the true identity of the goods, services, or business, to the detriment of the plaintiff or the public, and is misled into believing that he is getting plaintiff's product when he is in fact getting that of defendant. Howards Clothes, Inc. v. Howard Clothes Corp. *supra.* The test is whether the similarity is such as would deceive the ordinary customer. Brown Sheet Iron & Steel Co. v. Brown Steel Tank Co. *supra.*

It would indeed seem naive for us to say under the record in the instant case that anyone purchasing, for example, products in a small container or bottle marked Mayo-Cin, Mayos A-Wake Tablets, or Mayos Lotion, Rochester, Minnesota, might not be deceived into believing that it was a product originating from the well-known Mayo Clinic of Rochester, Minnesota.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.