**OKLAHOMA DISTRICT COUNCIL OF the ASSEMBLIES OF GOD OF the STATE, Appellee,**

v.

**NEW HOPE ASSEMBLY OF GOD CHURCH OF NORMAN, INC., Appellant.**

No. 47297.

Supreme Court of Oklahoma.

April 13, 1976.

As Corrected April 13, 1976.

Benedum & Benedum, by Ben T. Benedum, Norman, Monnet, Hayes, Bullis, Thompson & Edwards, by Ann Dudley Marshall, Oklahoma City, for appellee.

Luttrell, Pendarvis & Rawlinson, by Gary C. Rawlinson, Norman, for appellant.

IRWIN, Justice:

Summary judgment was rendered in favor of the Oklahoma District Council of the Assemblies of God of the State of Oklahoma, Inc., (plaintiff) permanently enjoining and restraining New Hope Assembly of God Church of Norman, Oklahoma, Inc., (defendant) from using the term "Assembly of God" or any derivative thereof in its name. Defendant appealed.

Plaintiff's petition for injunctive relief alleged in substance that:

(1) Defendant made application for association with the plaintiff and in doing so agreed to abide by the constitution and by-laws of the plaintiff and its parent body, the General Council of the Assemblies of God, and as a result thereof defendant was admitted to such association;

(2) In reliance on defendant's alleged agreement to abide by the constitution and by-laws of plaintiff, the plaintiff agreed and acquiesced in the assumption by defendant of a name incorporating the term "Assembly of God" into its title and to allow the incorporation of the said defendant under the name using said term in its title;

(3) Subsequent thereto, defendant allegedly failed to abide by the constitution and by-laws of the plaintiff and "by reason thereof the defendant was notified . . . that the recognition of the defendant as an Assemblies of God Church affiliated with the Oklahoma District Council of the Assemblies of God was withdrawn."

The petition goes on to allege why it is entitled to injunctive relief. Defendant answered by way of general denial and later amended its answer to include certain legal defenses. On motion for summary judgment the trial court issued a permanent injunction to be effective until defendant "cooperated in and abides with the constitution and by-laws of both the General Council and The Oklahoma District of the Assemblies of God."

The Court of Appeals determined that defendant had not and was not violating any provision of either the General or District Council's constitution or by-laws and that plaintiff was not entitled to injunctive relief. That Court reversed the summary judgment in favor of plaintiff with directions that an order be entered denying injunctive relief. Plaintiff filed its Petition for Writ of Certiorari.

The first issue presented is whether the protections of the First Amendment freedom of religion permit the exercise of jurisdiction by the civil courts of this state to determine the issue of compliance by one affiliated religious group with the rules, philosophies and precepts of the larger religious group with which it is affiliated. Plaintiff contends that civil courts are bound by the prior ecclesiastical adjudication that defendant was not acting in doctrinal conformance with the philosophies of the superintendent church bodies.

 The First Amendment to the United States Constitution guarantees, inter alia, religious freedom and separation of church and state. Recent decisions of the United States Supreme Court have left no doubt that except in the most limited of circumstances it is an abridgement of those fundamental constitutional rights for courts of civil jurisdiction to adjudicate any controversy involving relligous doctrine or precepts. *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S.

440, 89 S.Ct. 601, 21 L.Ed.2d 658. Quoting from the language of the Supreme Court in the cited case:

"Thus, the First Amendment severly circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded. But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property disputes, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment of organs of government for essentially religious purposes, (authority omitted); the Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. Hence, States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions."

■ The First Amendment as interpreted by the Supreme Court clearly prohibits civil courts from adjudicating whether religious doctrines have or have not been complied with as a basis for resolving a dispute between religious institutions. In *Presbyterian Church of the United States,* supra the Court quoted at length from its prior decision in *Watson v. Jones,* 13 Wall 679 at 728–729, 80 U.S. 679 at 728–729, 20 L.Ed. 666 at 676–677; there the Court said:

". . . The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. . . . All who unite themselves to such a body [the general church] do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them [sic] reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for."

Defendant recognizes the import of the First Amendment and the controlling decisions, but contends that this Court might examine plaintiff's actions against it and refuse to grant plaintiff its requested relief should we find that plaintiff's decision was the product of fraud, collusion, or arbitrariness. *Gonzalez v. Roman Catholic Archbishop of Manila,* 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929); *Maryland and Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970). We are convinced from a thorough reading of the cases that the doctrine defendant seeks to have us employ addresses only those situations where it is shown that the challenged decision of the church body was not based upon religious philosophy or doctrine, but was the product of a wilful attempt to deprive one of valid property

rights. Defendant has made no showing sufficient to meet that standard.

■ Inasmuch as the opinion of the Court of Appeals sought to make disposition of this case on an adjudication that defendant was not in violation of church canons, that opinion may not stand. It does not necessarily follow that plaintiff is entitled to injunctive relief as a matter of law because we find that civil courts are bound by ecclesiastical adjudication of doctrinal questions.

■ The order of the court entering judgment for plaintiff makes no finding of fact other than that plaintiff's ". . . motion [for summary judgment] should be sustained . . ." The court's order permanently enjoined defendant from use of the term "Assembly of God" or any derivative thereof so long and until defendant ". .. . cooperated in and abides with the constitution and by-laws of both the General Council and the Oklahoma District of the Assemblies of God." We assume from the language of the order and the briefs before the trial court that the court adopted plaintiff's ecclesiastical determination that defendant was in violation of the Church's canons and granted judgment for plaintiff as a matter of law.

Plaintiff's ecclesiastical adjudication of defendant's doctrinal nonconformance does not relieve plaintiff of the obligation of establishing its right to call on the equitable powers of the court to protect plaintiff's name by way of injunctive relief. We have examined the record, including the affidavits supporting plaintiff's motion for summary judgment, and find them inadequate to justify a summary determination in plaintiff's favor. The order of the trial court must therefore be reversed and this cause remanded for further proceedings.

Certiorari granted; Decision of the Court of Appeals vacated; Order of the trial court reversed; and cause remanded for further proceedings.

All the Justices concur.