OKLAHOMA DISTRICT COUNCIL OF the ASSEMBLIES OF GOD OF the STATE OF OKLAHOMA, INC., Appellee,

v.

NEW HOPE ASSEMBLY OF GOD CHURCH OF NORMAN, OKLAHOMA, INC., Appellant.

No. 50761.

Supreme Court of Oklahoma.

July 17, 1979. ·

Robert L. Doyel, Norman, for appellant.

John T. Edwards, Oklahoma City, Benedum & Benedum, Norman, for appellee.

IRWIN, Vice Chief Justice.

This is the second time this controversy has been considered by this Court. In both instances, appellant, New Hope Assembly of God Church of Norman (New Hope), appealed from a summary judgment permanently enjoining it from using the term "Assembly of God" in its name. The litigation arose after the General Council of the Assemblies of God, Inc. and the Oklahoma District Council of the Assemblies of God of the State of Oklahoma, Inc., (District), withdrew recognition of New Hope as an affiliated member and New Hope continued to use its previously adopted name.

In the first appeal—*Oklahoma District Council of the Assemblies of God of the State of Oklahoma v. New Hope Assembly of God Church of Norman,* Okl., 548 P.2d 1029 (1976)—we reversed the summary judgment in favor of District because the evidence was insufficient to justify summary disposition. Upon remand additional evidence was presented, and upon cross-motions for summary judgment, the trial court rendered summary judgment for District. New Hope appealed and contends the district court erred in rendering summary judgment for District and denying its motion for summary judgment.

In the first appeal (548 P.2d 1029) we said the First Amendment to the United States Constitution guarantees, inter alia, religious freedom and separation of church and state, and clearly prohibits civil courts from deciding whether religious doctrines have or have not been followed as a basis for resolving a dispute between religious institutions. However, the issue presented here does not involve a controversy over a religious doctrine or a doctrinal dispute. The question presented is whether District is entitled to an injunction enjoining New Hope from using the term "Assembly of God" in its name. This question must be resolved upon neutral, non-religious grounds.

New Hope contends that the term "Assembly of God", as it appears in its name, is a generic or descriptive term having no specific relationship to any body or group but having a wide and broad application to those people who assemble to do God's work as they see it. New Hope argues that no entity is entitled to exclusive use of the name or term because it is generic or descriptive.

District admits that the term "Assembly of God" is generic or descriptive in origin but contends it has acquired a secondary meaning and it is entitled to protection. District argues that by usage of the term, it has acquired a secondary meaning, i. e. it stands for churches affiliated with District and its parent organization. District asserts that it is entitled to protection under the rules relating to unfair competition.

The annotation 37 A.L.R.3d 277, discusses the rights of charitable or religious associations or corporations to protection against use of the same or a similar name by another. Numerous cases are cited which hold or recognize that the common law principles of unfair competition protecting business corporations against another's use of the same or a similar name are equally applicable to charitable or religious associations.[1] In one of the cases cited, *Purcell v. Summers,* 4 Cir., 145 F.2d 979 (1944), the name "Meth-

---

1. *Hooper v. Stone,* 54 Cal.App. 668, 202 P. 485 (1921); *American Gold Star Mothers, Inc. v. National Gold Star Mothers, Inc.,* 89 App.D.C. 269, 191 F.2d 488 (1951); *First Born Church of Living God v. First Born Church of Living God,* 156 Fla. 78, 22 So.2d 452 (1945); *People ex rel. Felter v. Rose,* 225 Ill. 496, 80 N.E. 293 (1907); *Mayo Clinic v. Mayo's Drug & Cosmetic, Inc.,* 262 Minn. 101, 113 N.W.2d 852 (1962); *Society* *of War of 1812 v. Society of War of 1812,* 46 App.Div. 568, 62 N.Y.S. 355 (1900); *Polish Nat. Catholic Church, etc. v. Diocese of Buffalo,* 171 N.Y.S. 401 (1918, Sup.); *Golden Slipper Square Club v. Golden Slipper Restaurant & Catering, Inc.,* 371 Pa. 92, 88 A.2d 734 (1952); *Tuberville v. Morris,* 203 S.C. 287, 26 S.E.2d 821 (1943); *Purcell v. Summers,* 4 Cir., 145 F.2d 979 (1944) (applying South Carolina law).

odist Episcopal Church, South" was in litigation. The Fourth Circuit Court of Appeals, in addressing the unfair competition aspect of appropriating another's name, said that:

" * * * principles ordinarily applied in the case of business and trading corporations are equally applicable in the case of churches and other religious and charitable organizations; for, while such organizations exist for the worship of almighty God and for the purpose of benefiting mankind and not for purposes of profit, they are nevertheless dependent upon the contributions of their members for means to carry on their work, and anything which tends to divert membership or gifts of members from them injures them with respect to their financial condition in the same way that a business corporation is injured by diversion of trade or custom. * * * ".

\* \* \* \* \* \*

"The question of protecting by injunction an eleemosynary or charitable organization, as distinguished from a business corporation, from unfair competition in the use of its name, was before us in *Grand Lodge I. B. P. O. Elks v. Grand Lodge I. B. P. O. Elks*, 4th Cir., 50 F.2d 860, 862, in which we examined the question thoroughly and laid down the rule, with the supporting authorities, as follows: 'It is well established that benevolent, fraternal, or social organization will be protected in the use of its name by injunction restraining another organization from using the same or another name so similar as to be misleading.' (Citations Omitted). The reasons underlying the rule are thus stated in Nims on Unfair Competition and Trademarks (3d Ed.) § 86: 'The fact that a corporation is eleemosynary or charitable one and has no goods to sell, and does not make money, does not make it out of the protection of the law of unfair competition. Distinct identity is just as important to such a company, oftentimes, as it is to a commercial company. Its financial credit— its ability to raise funds, its general reputation, the credit of those managing it and supporting it, are all at stake if its name is filched away by some other organization, and the two become confused in the minds of the public.' "

In the law of unfair competition, a corporate or trade name used in connection with the business to which it relates may become an asset of great value. When it does, it partakes of the nature of a property right, and equity will enjoin the appropriation and use of such name if confusion of identity is likely to result. *Little Tavern Shops v. Davis*, 4 Cir., 116 F.2d 903 (1941). Our Court addressed the problem in *Coalgate Abstract Co. v. Coal County Abstract Co.*, 180 Okl. 8, 67 P.2d 37 (1937), and said that geographical names and terms, as well as descriptive words, may not be exclusively appropriated but the use of such names, terms and words to palm off the goods of one as those of another and to carry on unfair competition may be lawfully enjoined by a court of equity to the same extent as the use of any other term or symbol. In that case we held the name "Coalgate Abstract Company" was not so similar to "Coal County Abstract Company" that the ordinary buyer, exercising ordinary intelligence and observation in business matters would likely be deceived, or likely to attempt and do business with the former company thinking that in fact it was the latter company.

A word or name is said to have acquired a secondary meaning if because of association with a product or firm over a period of time, the word or name has come to stand in the minds of the public as a name or identification for that product or firm. And, if a descriptive word or name has taken on a secondary meaning, courts will afford equitable protection to the party whose use of the word or name has created the secondary meaning. *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 2 Cir., 307 F.2d 495 (1962).

In *National Board of YWCA v. YWCA of Charleston, S.C.*, 335 F.Supp. 615 (1971), the

Court said the National Board, by the long and continued use of the name "Young Women's Christian Association", had acquired a secondary meaning to the name, and having acquired a secondary meaning, the name was entitled to protection even though it may have been at one time merely descriptive.

■ We hold that the common law principles of unfair competition protecting business corporations against another's use of the same or similar name are applicable to charitable or religious associations and corporations. If a term or name has acquired secondary meaning, such term or name is in the nature of a property right, and is entitled to protection. The right to this protection rests generally upon the fact that the use of identical or similar terms or names is likely to result in confusion or deception.

■ If District has established a secondary meaning in the term "Assembly of God", and confusion will likely result if New Hope uses the term in its name, District is entitled to the injunctive relief requested. *Coalgate Abstract Co. v. Coal County Abstract Co., supra; Kyhos v. Perpetual Savings and Loan Association,* 4 Cir., 480 F.2d 204 (1973); and *American Plan Corporation v. State Loan & Finance Corporation,* 3 Cir., 365 F.2d 635 (1966).

At issue is the trial court's sustaining of District's Motion for Summary Judgment and its overruling New Hope's summary judgment motion. On considering a motion for summary judgment, there can be no trial of fact issues since its function is to determine whether there are any genuine issues as to material facts. If there are any genuine issues as to material facts, or if reasonable men might reach different conclusions from undisputed facts, a motion for summary judgment should be denied. *Flick v. Crouch,* Okl., 434 P.2d 256 (1967).

■ The trial court did not find that a "secondary meaning" had been established. According to its journal entry the order was based on "[t]aking judicial notice of the correct usage of grammar, 'Assemblies of God' is found to be a correct denomination of a group constituting more than one 'Assembly of God'." Also, the trial court determined that "an obvious qualification of the name, such as 'Holiness Assembly of God', 'Southern Assembly of God' or the like might constitute a different situation not posed by this defendant (New Hope) whose name indicates the 'Assembly of God' church in the New Hope community of the city of Norman, Oklahoma." There is no evidence in the record that New Hope derived its name from a community or that there is a community of New Hope in the city of Norman.

The record will simply not support the trial court's order sustaining District's Motion for Summary Judgment based on the theory that District had established a secondary meaning in the term "Assembly of God". Neither will the record support a sustaining of New Hope's Motion for Summary Judgment. Therefore, the judgment granting District summary judgment is reversed, and the trial court did not err in overruling New Hope's Motion for Summary Judgment.

REVERSED

LAVENDER, C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.