**HAMMONS MOBILE HOMES, INC.
and Carl Hammons,
Defendants-Appellants,**

v.

**LASER MOBILE HOME TRANSPORT,
INC., d/b/a Hammons Mobile Homes
Transport, Plaintiff-Appellee.**

No. 32A01–8601–CV–4.

Court of Appeals of Indiana,
First District.

Dec. 11, 1986.
Rehearing Denied Jan. 27, 1987.

Frank E. Spencer, Indianapolis, for defendants-appellants.

John F. Wickes, Jr., Lynne D. Lidke, Scopelitis & Garvin, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Hammons Mobile Homes, Inc. and Carl Hammons appeal the trial court's award of damages and injunctive relief for unfair competition. We affirm.

## FACTS

In the mid 1950's, Carl Hammons and his brother, Bernis Hammons, obtained authority from the Public Service Commission to transport mobile homes within Indiana. They began a partnership business of transporting mobile homes on a for-hire basis. About 1963, Carl sold his share of the business to another brother, Norman Hammons. Until 1979, Bernis and Norman owned and operated the business under the name of Hammons Trailer Transport. During that time, the business acquired a good reputation in the mobile home transportation business.

After Carl sold his share of the business to Norman, Carl's business consisted of mobile home sales, repairs and lot rentals. Neither Carl nor his corporation, Hammons Mobile Homes, Inc., had operating authority from the Commission for intrastate transportation of mobile homes. However, Carl occasionally transported mobile homes out of state.

In 1979, Laser Mobile Home Transport, Inc. (Laser) purchased the business of Hammons Trailer Transport from Bernis and Norman. In exchange for the $125,000 price, Laser received the Commission operating authority and the "Hammons" name; Laser did not receive accounts receivable or equipment.

As an integral part of the purchase, the parties understood that Laser would use

the name "Hammons" for a period of ten years. Bernis and Norman signed "Consent to Use of Name" forms which purported to give Bernis's and Norman's consent to Laser's use of the name "Hammons". Carl Hammons was not a party to this agreement. Jim Laser, president of Laser, testified that, because of the excellent reputation of "Hammons" as a mobile home transporter, there was "no way" Laser would buy the company without obtaining use of the name. Accordingly, $75,000 of the purchase price was attributable to the use of the name. The remaining $50,000 was attributed to the operating authority. On June 15, 1979, the Public Service Commission approved the sale of the Hammons Trailer Transport operating authority to Laser. Laser then filed the certificates of assumed business name with the county recorder.

Laser has advertised in the Yellow Pages under the heading of "Mobile Homes—Transporting" since 1979. The telephone book is Laser's most important advertising medium. In 1980, Carl's corporation also began to advertise in the Yellow Pages under the heading "Mobile Homes—Transporting". Prior to 1980, Carl's corporation did not advertise under this heading except on a few occasions. In 1981 and 1982, Carl's company was listed as "Hammons Mobile Home". The "s" on the end of the word "Homes" expressly was omitted so that Carl's company's name would be listed ahead of Laser which was listed as "Hammons Mobile Homes Transport".

In 1983 and 1984, Carl's company continued its listing as "Hammons Mobile Home". Additionally, Carl's company put in second ads so that Laser was the third "Hammons" listed under the Yellow Page heading "Mobile Homes—Transporting". Finally, Carl's company also added color to its ads similar to the coloring in Laser's ads. In attempting to distinguish itself from Carl's company in the Yellow Pages, Laser expended $6,000 over and above what it would have spent but for Carl's actions.

In addition to the Yellow Page ads, Carl Hammons used red and blue business cards which were similar to those used by Laser. Also, when Laser purchased and distributed hats for advertising purposes, Carl's company distributed similar hats to the public. Furthermore, Laser received complaints about services it did not provide, incorrect mail, and telephone calls directed to a person not employed by Laser. The misdirected calls and mail were intended for Carl Hammons's company, not Laser.

After a trial, the trial court found Carl and his company, Hammons Mobile Homes, Inc., guilty of unfair competition. The trial court awarded damages in the amount of $21,500.00 and enjoined Carl and his company from using the name "Hammons" in any business associated with mobile home transportation. Carl Hammons and Hammons Mobile Homes, Inc. then perfected this appeal.

## ISSUES

1. Whether there is sufficient evidence of probative value to support the trial court's judgment based upon the theory of unfair competition.

2. Whether there is sufficient evidence to support the trial court's award of $21,500.00 in damages.

3. Whether the trial court erred in issuing an injunction.

## DISCUSSION AND DECISION

On appeal, this court will not reweigh the evidence or judge the credibility of witnesses. Instead, we will affirm if the judgment is supported by substantial evidence of probative value. *Hoosier Insurance Co. v. Mangino* (1981), Ind.App., 419 N.E.2d 978, 981, *trans. denied*. Our deference to the trial court's findings of fact is particularly appropriate in cases involving unfair competition. *See Deister Concentrator Co. v. Deister Machine Co.* (1916), 63 Ind.App. 412, 424, 112 N.E. 906, 911.

*Issue One*

The tort of unfair competition is premised upon the rationale that a person who

has built up good will and reputation for his business is entitled to receive the benefits from his labors. *Hartzler v. Goshen Churn and Ladder Co.* (1914), 55 Ind.App. 455, 464, 104 N.E. 34, 37. Our courts have held that such an interest is a property right deserving judicial protection. *Id.*

Our court long ago stated the general principles of unfair competition as follows:

" 'Unfair competition consists in passing off or attempting to pass off, upon the public, the goods *or business* of one person as and for the goods *or business* of another. It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect. And it may be stated broadly that any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods *or business* of one person as and for that of another, constitutes actionable unfair competition. The definition is comprehensive enough to reach every possible means of effecting the result.' 38 Cyc. 756."

*Id.* (Emphasis added). *See also Minas Furniture Co. v. Edward C. Minas Co.* (1929), 96 Ind.App. 520, 165 N.E. 84, *trans. denied.* More recently, federal courts have interpreted Indiana's law on unfair competition as an attempt to create confusion as to the source of the unfair competitor's goods. *Westward Coach Manufacturing Co. v. Ford Motor Co.* (7th Cir.1968), 388 F.2d 627, 633, *cert. denied,* 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386; *Terry v. International Dairy Queen, Inc.* (N.D.Ind. 1983), 554 F.Supp. 1088, 1098.

■ In alleging unfair competition, the plaintiff is not required to show actual deception, but only that deception is the natural and probable consequence of the tortfeasor's actions. *Hartzler,* 55 Ind.App. at 465, 104 N.E. at 37; *Deister,* 63 Ind.App. at 420, 112 N.E. at 909; 20 I.L.E. *Monopolies and Unfair Trade* § 11 (1959). However, actual examples of public deception "afford the strongest possible proof of the deceptive tendency of defendant's acts.

. . ." *Hartzler,* 55 Ind.App. at 465, 104 N.E. at 38. When considering the issue of deception, we look to "the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates." *Durakool, Inc. v. Mercury Displacements Industries, Inc.* (1981), Ind.App., 422 N.E.2d 680, 682 n. 3, *trans. denied.*

■ In reviewing the case under consideration, we find sufficient evidence to uphold the trial court's holding that Carl and his company were guilty of unfair competition. When Bernis and Norman Hammons sold their mobile home transport business to Laser, the "Hammons" name had a high reputation. To Laser, this was a property right for which it paid $75,000. Although Laser did not have the exclusive right to use the "Hammons" name in the transport business since Carl was not a party to the sale or the accompanying agreements giving Laser the right to use the name, Laser was entitled to protection against anyone trying to "palm off" its services for that of Laser. The record is replete with instances not only of probable confusion but actual confusion among ordinary purchasers of mobile home transportation services. Carl's schemes involving Yellow Pages advertisements, promotional hats, and business cards created a tremendous potential for confusion. Additionally, Laser's receipt of mail, complaints, and telephone calls intended for Carl's company evinces actual confusion in the marketplace. Therefore, the trial court's holding that Carl Hammons and Hammons Mobile Homes, Inc. were guilty of unfair competition is supported by substantial evidence of probative value.

Carl alleges that we should reach a contrary conclusion since he was using his surname. We disagree. On the issue of unfair competition and the use of a man's name, our court stated as follows:

"It may be stated as a general proposition that a man's name is his own property and he has the right to its use and enjoyment the same as any other property right, and so long as such use be a

fair and reasonable exercise of such rights, he cannot be held liable for incidental damages to a rival in business using the same name, but he must make an honest use of his name, and not injure the good will and reputation of a rival by palming off his goods or business as that of such rival. Nor will he be permitted to use his name fraudulently so as to appropriate the good will of an established business of his competitor."

*Deister,* 63 Ind.App. at 418, 112 N.E. at 909; *see also David B. Findlay, Inc. v. Findlay* (1966), 18 N.Y.2d 12, 218 N.E.2d 531, 271 N.Y.S.2d 652, *cert. denied,* 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212; 74 Am.Jur.2d *Trademarks and Tradenames* § 114 (1974). In the case at bar, there was sufficient evidence for the trial court to conclude that Carl intended to "palm off" his services for those of Laser's and that he created actual confusion in the marketplace. Thus, Carl clearly transcended the permissible usage of his name.

*Issue Two*

■ Carl alleges that there is insufficient evidence to support the trial court's damages award in the amount of $21,500.00. In reviewing a damages award, we will not reverse unless the amount of damages assessed by the fact finder is so excessive or inadequate as to indicate that the fact finder was motivated by prejudice, passion, partiality, corruption, or some other improper element. *Bottoms v. B and M Coal Corp.* (1980), Ind.App., 405 N.E.2d 82, 92. Stated differently, we will not reverse a damages award if it is within the bounds of probative evidence introduced at trial. *English Coal Co. v. Durcholz* (1981), Ind. App., 422 N.E.2d 302, 312, *trans. denied.*

■ In an action for unfair competition, damages are appropriate only when the defendant's conduct was deliberate and willful. *See Jones v. Roshenberger* (1924), 82 Ind.App. 97, 101, 144 N.E. 858, 859; P. Goldstein, *Copyright, Patent, Trademark and Related State Doctrines* 95 (2d ed. 1981); 74 Am.Jur.2d *Trademarks and Tradenames* § 149 (1974). In the trial court's order, it held that Carl "palm[ed]

himself off to customers". Record at 409. We read this as indicating that Carl's conduct was deliberate and willful so that damages were justified if proven. The trial court's finding of "palming off" is tantamount to a finding of intentional, deliberate conduct. A person cannot palm himself or his business off as another without intending to do so. There also was clear evidence in the record indicating that Carl was not just an innocent infringer.

■ Because of the amorphous nature of unfair competition, we will not impose upon the plaintiff the burden of proving specifically the damages to the business. *E.g., Wawak and Co. v. Kaiser* (7th Cir.1942), 129 F.2d 66, 69. Although the plaintiff must show that damages have in fact occurred, mathematical certainty as to the amount is not necessary. *Id.; American Electronics, Inc. v. Neptune Meter Co.* (1968), 30 A.D.2d 117, 119, 290 N.Y.S.2d 333, 335.

■ In addition to hearing evidence of actual confusion in the marketplace and diverted sales of transport services, the trial court heard evidence of nearly $55,000 net profits over a three year period by Carl's company. Laser also submitted evidence of over $6,000 which it spent trying to distinguish itself from Carl's Yellow Page advertisements. Finally, Laser valued the Hammons name at $75,000 when it purchased the business from Bernis and Norman. From all of this evidence, we conclude that the $21,500.00 award was well within the scope of evidence at trial.

*Issue Three*

Carl Hammons alleges that the trial court erred when it issued a complete injunction against Carl's use of the name "Hammons". In its order, the trial court stated, "Carl Hammons should be enjoined from using the name Hammons, Hammons Mobile Homes Transport, Hammons Trailer Transport, Hammons Mobile Homes Transport, Inc., or any other variation thereof, confusingly similar, to the name given in the consent to use in the proceedings be-

fore the Public Service Commission." Record at 409. We read this as enjoining Carl's use of his name in the transportation business only; his usage was not enjoined for his mobile home sales and rental business.

In instances of unfair competition, a complete injunction is normally an appropriate remedy. *Hartzler,* 55 Ind.App. at 470, 104 N.E. at 39; 20 I.L.E. *Monopolies and Unfair Trade* § 13 (1959). However, this is not true when the defendant's use of his own name creates the potential for confusion. In *Deister Concentrator Co. v. Deister Machine Co.* (1916), 63 Ind.App. 412, 418, 112 N.E. 906, 909, our court stressed the importance of a man's use of his own name so long as that use is honest. Courts are very reluctant to enjoin completely the use of a person's surname in a business. *Deister,* at 419, 112 N.E. at 909; 74 Am. Jur.2d *Trademarks and Tradenames* § 114 (1974); 87 C.J.S. *Trade-marks, Trade-names, and Unfair Competition* § 44 (1954); 3A R. Callman, *Unfair Competition, Trademarks and Monopolies* § 21.28 (1986); 1 H. Nims, *Unfair Competition and Trade-Marks* § 68 (4th ed. 1947).

Whatever may be the rule for individuals, a different rule applies to corporate names. A person is born with a surname whereas a corporate name is assumed voluntarily. Therefore, courts scrutinize the use of a corporate name more carefully than a person's name. Callman, at § 21.29; Nims, at § 90. Many courts have enjoined completely the use of a surname which is part of a corporation's name where there is evidence of an intent to deceive the public and capitalize on another's good will and reputation. *E.g., De Nobili Cigar Co. v. Nobile Cigar Co.* (1st Cir.1932), 56 F.2d 324; *Wood v. Wood's Homes, Inc.* (1974), 33 Colo.App. 285, 519 P.2d 1212; *Mayo Clinic v. Mayo's Drug and Cosmetic, Inc.* (1962), 262 Minn. 101, 113 N.W.2d 852; *L. Martin Co. v. L. Martin and Wilckes Co.*

(1908), 75 N.J.Eq. 39, 71 A. 409, *reversed on other grounds,* 75 N.J.Eq. 257, 72 A. 294; *Robert Reis and Co. v. Herman B. Reiss, Inc.* (1946), Sup.Ct., 63 N.Y.S.2d 786. Other courts have issued injunctions which allow the use of the surname in the corporate name so long as the defendant distinguishes itself and its goods from the plaintiff's with explanatory phrases. *E.g., L.E. Waterman Co. v. Modern Pen Co.* (1914), 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142; *Taylor Wine Co. v. Bully Hill Vineyards, Inc.* (2nd Cir.1978), 569 F.2d 731. In view of this split in authority on the proper relief, we find an opinion of the Minnesota Supreme Court instructive:

> "[O]rdinarily a plaintiff might be adequately protected by an injunction ordering the defendant to use the name only with such information and precautions as would unmistakably remove any connection with the plaintiff. [Citation omitted]. However, it is within the discretion of the trial court to shape the remedy to the situation before it, and it may absolutely prohibit the use of the name when it is necessary 'to prevent probable deceit of buyers.' Annotation, 150 A.L.R. 1067, 1133."

*Mayo Clinic,* 262 Minn. at 107, 113 N.W.2d at 856. In the case under consideration, we will not disturb the trial court's complete injunction of the name "Hammons" unless the trial court abused its discretion.

■ In the case under consideration, there was ample evidence of Carl's intentional scheme to defraud and confuse the public and to take advantage of the plaintiff's good will and reputation. The only apparent use of the defendant's use of "Hammons" in the mobile home transportation business was to divert business from the plaintiff. In light of these circumstances, the trial court did not abuse its discretion in fashioning the injunction.[1] The relief applies only to the defendant's use of "Hammons" in connection with the mobile home transport business; the defendant

---

1. Our holding is not changed by the fact that Carl's company was incorporated prior to Laser's purchase of the "Hammons" name from Carl's brothers since Carl's corporation did not use the surname in the transportation business until after Laser began to utilize the name.

still can use "Hammons" in the mobile home sales and lot rental business or in any other business.

Judgment affirmed.

ROBERTSON, P.J., and NEAL, J., concur.